Milligan, J.,
delivered the opinion of the Court.
The contest in this case, arises out of the construction of the Will of Elias Vancil, who died in September, 1852, possessed of a considerable real and personal estate, leaving his widow, Tabitha—who afterwards intermarried with the defendant, Tilghman H. Evans—and five sons surviving him.
The first clause of the Will reads as follows: “ I will and bequeath unto my beloved wife, Tabitha, the tract of land on which I now live; also, two negroes—one man by the name of Rial—one negro woman by the name of Jane; also, all the personal property that I now own, during her life or widowhood, and no longer.”
2d, “I will and bequeath unto my five beloved sons, namely, Elias Vancil, John Vancil, Roland Vancil, Samuel Vancil and Alexander Vancil, after the death or marriage of my beloved wife, Tabitha, all that tract or parcel of land I have willed to my wife, Tabitha, to have and to hold the same forever; also, the two negroes, to be sold and the proceeds of said sale to be equally divided between my five sons, after the death or marriage of my wife, Tabitha.”
In the 3d clause of the Will, the testator provides: “ That if either, or both of the above named negroes that I have willed to my wife, Tabitha, should become dissipated and disobedient, the said negro, or negroes, shall, or may be, hired out; and the proceeds of said hire shall go to the use and support of my wife and five children.”
*342 The 4th clause is in the following language: “ My further will and desire is, that all my just debts he paid; and what money I have go to the use and support of my five children and my wife, Tabitha, whom I hereby appoint sole executrix of this my last will and testament.”
The widow qualified as the executrix of the Will, and soon after the testator’s death, was delivered of a posthumous son, who, under a decree of the Chancery Court, was held entitled to share equally with the other children and devisees. The son, Elias Vancil, died unmarried and without issue, leaving, after the admission of the posthumous son, the widow and only five children, to share in the testator’s bounty.
Under this state of facts, this bill was brought by the children of the testator, who are minors, and sue by their next friend, Allen Hurst, after the second marriage of their mother, with the defendant, Tilghman Evans, to wind up the estate, and have the rights • of the parties declared under the Will.
The testator, prior to his death, and after the execution of his Will, sold the negro man Rial, and died the owner of one tract of land and five undivided sevenths in another tract, the slave Jane, about $900 in money, horses, cattle, hogs and sheep, with the ordinary farming implements, household and kitchen furniture, etc.
The alleged ambiguity in the Will, as it seems to us, amounts to nothing. The first clause could not be made plainer. Its terms are so unequivocal and direct, that an attempted interpretation of it would only tend to confusion. It is clear, the testator intended to create *343 a limited estate in the land on which he then lived, and in the two negroes named in his Will, as well as in all the personal property which he then owned, in his wife, determinable on her death or marriage. The language is broad and comprehensive enough to include every species of property, as well money as other personal chattels.
The second and third clauses are equally free from difficulty and ambiguity. In fact, they strengthen the first, and demonstrate beyond all doubt, that the testator intended that all his property, of whatever kind or description, he then owned, should pass under his Will, to his wife, for her natural life or widowhood, and on the happening of either event, over to his children, share and share alike.
The only imaginable difficulty arises on the fourth clause, which, after providing for the payment of the debts of the testator, declares, that “what money the testator may have, shall go to the use and support of his five children and his wife,” without, in terms, expressing any limitation over.
This clause of the Will, we do not think, is incompatible with the first clause; and the rule of construction that the last clause of a Will must prevail over the first, is, therefore, inapplicable. This rule applies in cases only where the two clauses are incompatible and contradictory, and cannot, for that reason, stand together: Henry et al., by next friend, vs. Hogan et als., 4 Hum., 208; Redfield on Wills, 451; 3 Yes., 105; 6 Yes., 102.
*344 The prevailing rule governing the construction of testamentary papers, is, that the intention of the testator shall be carried into effect, when it can be fairly ascertained, unless it be in violation of some established principle of law. In this case there can be no doubt his primary object was, to clothe his wife with a beneficial estate for life, or during her widowhood, in' all his real and personal estate, including the money on hands, with remainder over, if any, after her death, or the termination of her widowhood, to his children equally.
This construction is, not only in conformity to the clear intention of the testator, but in harmony with authority; for, as a general rule of law, when a former legacy is given with a limitation to other parties, a second legacy given in general terms, will go to the same parties, and be limited over in the same way; or, when one legacy is given in addition to a former legacy, it will be construed as subject to the same conditions as the former: Crowder vs. Clowes, 2 Ves. Jr., 449; Redfield on Wills, 360, and authorities cited.
The next question presented in this record, is: What are the rights of the remainder-men after the the termination of the particular estate ? To settle this question, we are not left to inference. It has been repeatedly before this Court, and we need do but little more than follow our own adjudication.
In general, when perishable property is given to one for life, and a remainder to another, it is the duty of the executor to sell the estate, and vest the funds — the interest of which, only, will belong to the person entitled *345 to the life estate; and when that shall fail, the entire fund shall go to the remainder-man. But, when the Will indicates the intention of the testator, that the tenant for life should enjoy the property in specie, no such sale can he made, and the remainder-man is entitled to such part of the property, originally given after the life shall fail: Woods vs. Sullivan: 1 Swan, 507; see, also, Kent’s Com., 352-354.
In view of this principle, and the construction we have given to the Will, it results, that the remainder-men in this case, are only entitled to such parts of the personal property originally given, as remained after the death of the tenant for life. And if the tenant for life has wasted or converted any of the chattels to unauthorized uses, her estate will he liable for the amount so wasted and consumed.
But if they were consumed in the use intended to be made of them, or perished by time, or the death of animals, or wear and tear of furniture and farming implements, the rights of the remainder-men are defeated as to such property. They are entitled to nothing except what remained after the termination of the particular estate of the original stock, or compensation out of the life tenant’s estate, for such as she has wasted or converted to unauthorized uses.
The rents and use of the land, the hire and labor of the slaves, the accessions, crops, young animals — the offspring of those originally given, and the entire fruits of the life estate, belong to the tenant for life, absolutely. Such accessions constitute no part of the testator’s estate, and the remaider-men can, therefore, have no claim, under *346 the Will, to any of them: V. S. Forsey and Wife vs. Jesse Luton, Ex’r, et al., 2 Head., 183; Woods vs. Sullivan, 1 Swan, 507; Henderson vs. Vaulx and Wife, 10 Yer., 30; 1 Hum., 498.
As to the real estate, it appears that the testator was the owner of one tract of land, and five-sevenths undivided interest in another. At the time of his death, and for sometime previous, he had held the possession of both tracts, including the two-sevenths interest to which he ■ had no title. After his death, and the qualification of his executor, on a bill filed in the Chancery Court for partition, the parties in interest in the land, consented to a decree, whereby the testator became bound to pay to the complainants in the bill, the sum of $300, the costs of the cause, and counsel fees; and the title to the two-sevenths undivided interest in the land, was vested in her and her six children, by name, all of whom were then living.
The object of this purchase, after the filing of the bill for partiton, rents, etc., was two-fold:—1st, to relieve the testator’s estate from its liability for rents; and 2d, to secure the title to the outstanding two-sevenths undivided interests, for the tenant of the particular estate, with remainder over to the children of the testator. This view of the case is apparent from the whole proceedings connected with the transaction, as well as the decree divesting and vesting title.
But, if it were not so apparent, the law would raise a trust in favor of the children, which a Court of Chancery would enforce: Cox vs. Cox & Talbut, Peck’s R., 443-451; Hale vs. Hale, 4 Hum., 183.
*347 The purchase price of the two-sevenths of the land, as it clearly appears, was paid out of the money to which the widow had onlya beneficial interest for life or widowhood. In her settlement with the County Court Clerk, as executrix of the Will, she charged the estate with the amount thus paid, and received a credit for it; and she cannot now come, after voluntarily terminating her life estate, and claim, upon any principle of equity, title in fee, to the two-sevenths undivided interests, purchased by the funds of the estate, for the benefit of herself and the remainder-men. Had she not required the money paid for these shares, for the support and maintenance of herself and children, she could have loaned it out, and received the interest absolutely; but she elected, and we think properly, to free the estate from litigation, and to invest it in the land, and, in lieu of the interest, to receive the rents and profits. So, upon no hypothesis, is she now entitled to any interest in the land.
These two shares of the land, in the view of a Court of Equity, will be held to belong to the remainder-men, and the widow will be charged with whatever of the personal property passed to her, under the Will, for life or widowhood, which remained at the date of her second marriage; and such of it, if any, as she may have wasted, during her tenancy, or converted to unauthorized uses, and credited with the entire fruits of the widowhood estate.
The money on hand or due, which passed to the tenant for life, under the Will, as other original chattels, goes to the remainder-men, less the interest, which ac *348 crued prior to the widow’s second marriage. The interest, as other accessions, is hers absolutely.
No charge will be allowed against the remainder-men, for their support and maintenance during their minority, and the existence of the limited estate; nor will the widow be held responsible for any expenditures for the benefit of herself or children, which were in reasonable conformity to the amount of the estate, the rank and position the family occupied in society.
The decree of the Chancellor will be reversed and modified as herein indicated, and the cause remanded for all proper accounts.