Freeman, J.,
delivered the opinion of the court.
J-ames Robinson and Eliza Hutchins being about to many in February, 1840, made a marriage contract, in the town of Winchester, Tennessee, securing the property of said Eliza to herself, with certain limitations to be hereinafter noticed. At the time of the contract, Eliza had an estate in her own right, both parties to the contract having *448 children living at the time by former marriages, whom the bill alleges had been -amply provided for by them, respectively, before this time.
Mrs. Adylett and complainant, Thos. H. Robinson, are the children of Mrs. Robinson by the second marriage. The contest in the case is between these children, and their half brothers and sisters, or descendants by the former marriage of Mrs. Robinson; complainants claiming the property in dispute, under the marriage settlement or contract, defendants, the half brothers and sisters as general heirs of their mother, both Robinson and wife being dead. The demurrer of defendants to the bill was sustained, and bill dismissed, from which decree this appeal is prosecuted.
The case turns on the construction and effect of the contract of 1840, which is as follows: “Articles of agreement entered into, this 17th of February, 1840, between James Robinson, of the town of Winchester, of the -one part, and Eliza Hutchins, of the same place, of the other part, witnessatli: that, whereas, a marriage is shortly to be had and solemnized between the parties aforesaid, -and the said Eliza Hutchins being seized and possessed in her own right of a considerable estate, both real and personal, amongst which is the following, to wit: The said Eliza’s undivided interest in a house and lot in Georgetown, in the District of Columbia; also a tract of land in Frederick county, Maryland, and a house and lot in the city of Washington, of the estate of Jacob Holston, deceased, a negro man named Addison, and her undivided interest in four other slaves, house and kitchen furniture, and one-third part of the money due and owing to the estate of her late h-usband, John Hutchins, deceased, and bank stock in the hands of Thos. T. Brent, executor of said decedent; and the said parties being desirous to secure said property to the only proper use and behoof of the said Eliza, and her heirs: it is hereby coverunted and agreed to and between them, in case the marriage should take effect, that 'all the right, title and interest *449 of the said Eliza Hutchins in and to said property, and choses in action, as well as other property and chose» in action, now belonging to the said Eliza, shall be and remain her own individual property in the same manner as if she were to remain a feme sole, with full and ample power for the said Eliza, notwithstanding her coverture, to dispose of the same either by deed, or by her last will and testament duly made and published, in any manner she may think proper, subject to the following conditions, limitations and restrictions, that is to say: (1) In case there should be issue of the marriage aforesaid, then said property and every part thereof, shall descend to such child or children, share and share alike, according to the law of the Sítate of Tennessee. (2) In ease there should be no issue of said marriage, then to be disposed of by the said Eliza, as above authorized. (3) The said properties and moneys to be and remain in the possession of James Robinson, and the profits thereof to be appropriated to the joint use of the said James Robinson and Eliza Hutchins, his intended wife, during coverture, and also for the use and support of any child or children of said intended marriage, as well of their joint families (each of the parties at present having children), but in no event is any part or portion of the principal or capital of the property aforesaid to be used or consumed without the consent of the said Eliza first had and obtained, nor is the said property or any part thereof, to be in any manner subject to the debts of said James Robinson, contracted, or to be contracted, without the consent of his said intended wife.”
Several questions are presented for decision on the above instrument. Eirst, it is said, the instrument gives the fee to Mrs. Robinson, in stating its object to be “to secure said property to the only proper use and behoof of the said Eliza and her lieirs,” etc., and the subsequent, limitations .are void, as limiting a fee upon a fee. This construction *450 cannot be maintained on this language, for the reason, among others, that it is founded on merely a portion of the instrument, and would be to exclude other important provisions having a nmteral bearing" on its true meaning and legal effect. The whole clause succeeding the expression of the purpose of making the instrument to> he “to secure said property to the only proper use and behoof of the said Eliza and her heirs,” is, “that all the right, title and interest of the said Eliza Hutchins in and to said property and dioses in action, as well as other property and dioses in action now belonging to said Eliza, shall he and remain her own individual property, in the same manner as if she were to remain a feme sole, with full and ample power for the said Eliza, notwithstanding her coverture, to dispose of the same) either by deed or her last will and testament,” etc., subject, however, to the restrictions following; so that all the property retained by her is contracted to he held to such conditions, restraints and limitations.
The first of these is — In case there should he issue of the marriage aforesaid, then the said property and every part thereof shall descend to such child or children, share and share alike. The true purpose and construction is to carve out a contingent remainder, contingent on the birth of issue, reserving a life estate to the wife, the remainder vesting on the birth of issue, and opening to let in after born children, as they come into being. Tbe whole estate is reserved to the wife to the exclusion of the husband, as to title, and then the 'after devolution of the estate is provided for. On the birth of issue this remainder, as we have said, becomes vested, and ceases to be contingent.
This is further shown by the next limitation or provision, which is: “In case there is no issue of said marriage, then to be disposed of by said Eliza as above authorized,” that is, by deed or will. It is true there might be difficulty in disposing of the estate by deed under this provision, as it *451 eould not be determined there would be no issue during the coverture, before the death of one of the parties.
However, even this might, be met, if she should become discovert by the death of the husband, leaving 'his wife surviving; she eould also execute this power by will taking effect on her death, and thus the provision be made effectual. It is added in the first clause that should there be issue of the marriage, then “said property . . . shall descend to such child or children, share and share alike,” according to the law of the State of Tennessee.
The word “descend” is not here used in its technical sense, but means “shall go to,” or be vested in “such child or children, share and share alike,” or equally as is provided by the law of Tennessee in oases of descent or distribution.
It is said, however, that the words, “issue -and heirs” mean an indefinite failure of issue or heirs, or a limitation to the issue to take in succession, and that this gives the absolute 'estate to the first taker under the rule in Shelley’s Case; at any rate it is a fee 'tail special, as limited tO' the issue of the marriage, and under the act of 1784 [Oh. 22, sec. 5] (Code 2007), this is converted into a fee simple, and this settlement being made in 1840, before our act of 1851--2 [Ch. 91, sec. 3] (Code 2008), must be construed under the rules of the common law, however it may defeat the intention of the makers of the instrument. This would probably be true if the words issue and heirs are to be taken in their technical signification, as argued by counsel. As is said by this court in Kay v. Connor, 8 Hum., 633, the word heirs, and we may add issue, is. to be construed in its technical sense as words of limitation and not of purchase, unless there be other controlling words clearly showing that a contrary meaning is intended by their use. NumeN ous other cases lay down this principle. This first provision of the deed contains such words, we think, clearly. In case there should be issue, etc., then the property shall de *452 scend, or go to, or vest in sncli child or children of the marriage, share and share alike. Here the word child or children is used to designarte the issue referred to in the next preceding line of the same clause, and fixes beyond question the sense in which the word issue is used, not as an indefinite number taking the estate in succession, but to the children of the marriage. In this view the word children or child is meant by “issue,” and is a word of purchase ; nd not of limitation. The meaning is, if there be a child or children of the marriage, then the property shall go to such child or children equally, or share and share alike. It is proper to remark that the word heirs does not appear in the part of the instrument providing for the devolution of the estate, but only in the recital of the purpose of the deed.
The next position argued in favor of defendant is, that there is an unlimited power of disposition given Mrs. Robinson, inconsistent with the estate over in the children, which avoids such subsequent estate. The general rale laid down in the case of Smith. T. v. Bell, M. & Y., 302, that “if the first taker has power* during his life to dispose of the property absolutely, the devise over is void, and the first taker takes the fee,” has been so often recognized as to need no further discussion. This rule, however, as we said in the case of McGavock et al. v. Pugsley, MS., at Nashville, last term [since reported in 12 Heis., 689], as a rule of property is to be adhered to; but, as defeating evidently the intention of the parties, ought not to be extended any farther than has been done. That it had been subject to a qualification in its application in our cases that was equally well settled as the rule itself, the language of Judge Totten, in the case of Deaderick v. Armour, 10 Hum., 596, was cited with .approval, as follows: “That where the power of disposition giren the first taker is qualified or restricted, an estate for life only is given.” "We followed the above case and the case of Pillow Ex. v. Rye *453 and wife at al., 1 Swan, 190, and held that the language “to be used and enjoyed by her during her natural life, hereby authorizing her to use and dispose of the same in any way she may deem necessary for the support -of herself and our two daughters,” gave only a life estate; that the power of disposition was to be exercised when deemed necessary for the convenience and support of herself and two children, “but not without sucb necessity,” and that this was such a qualification and restriction on the power of disposition given the first taker as took the case out of the general rule referred to.
Without going again over the cases, the only question is, does this instrument contain such a qualification and restriction on the supposed power as to prevent its being brought under the operation of the general rule above stated? We think it does; after providing for the appropriation of the profits to the joint use -of the husband and wife; and the family, it is added, “but in no- event is any paid or portion 'of the principal or capital of the property aforesaid to be nsed or consumed without the consent of the said Eliza first had and obtained.” That is, it is not to be used -or consumed for the purposes above specified without such consent. This, at most, can only give a qualified power of disposition for the specified purposes; that is, for support of the family if necessary to be used or consumed in meeting their wants as provided for. We think this is as strong as a qualification of the power in the case of Pillow v. Rye and wife, and the case of McGavock et al. v. Pugsley. The next provision bearing on the question is the concluding one, providing against the property being1 subject to the debts of the husband without the consent of the wife. This might make it alienable in the discharge of his debts, by the consent of his wife, but it is not absolute, unqualified power of his disposition, such as is required under the cases we have referred to^ which would defeat *454 ■the remainder over and give tbe first taker an absolute estate.
The next question presented grows out of the facts charged in the bill as to the fund with which the land in controversy was purchased. It is alleged that Robinson and wife received from the moneys and bank stock referred to in the settlement, about $6,000, and used $1,500 of this money for this land, which was conveyed to said “Eliza Robinson, her heirs and assigns, free from the debts or liabilities of her husband, the consideration having been paid out of the individual fund of the said Eliza.” It is claimed the land vested in and was held by said Eliza, subject in all respects to the provisions of the marriage settlement precisely, as the bill says, in the same manner as the money was held with which the land was purchased.
The question is, whether*, if a tenant for life of a fund, invest the fund or exchange the property which he holds subject to a remainder in other property, does this property take the place of the fund so invested in it, or is the remainderman entitled to elect whether be will take the fund or the property purchased with it. the case of Vaden, Admr. v. Vaden et al., 1 Head, 444, is precisely in point on this question, and seems conclusive against the complainants. It is there held distinctly that in case of investment of money held by a party for life in slaves, that the remainderman bad no right to the slaves so purchased, hut, only to the money so invested at the termination of the life estate; that the holder of the life estate is not a trustee for the remainderman as a guardian, personal representative or pure trustee is, and the fund could not be followed in its new form. This decision is based on reference to some of our own cases, but mainly on cases cited from North Carolina, one of which is cited as follows: A devised to his wife, whom he also appointed as his executrix, $1,000 during her life, and after her death, to his children. The wife purchased negroes with this money, and they *455 greait.ly increased in value: Held, that the children had no right or interest whatever in these negroes, but they belonged absolutely to the wife. The remainderman had only a right to the one thousand dollars at the death of the wife. If the life tenant was insolvent or the fund in danger, it was held that the remainderman would be entitled, on a bill filed for the purpose in the lifetime of the first taker, to have the property so purchased held as a security for the payment of the money so used, but this is held to be all the remainderman is entitled to in this direction.
It follows that the complainants are not entitled to the land in controversy, but would be entitled only to the money invested in it as against the estate of their mother, in a proper proceeding for the purpose on the facts stated in this bill.
The case is to be remanded, for division of the property, as requested by counsel. A decree will be drawn in accordance with this opinion. Costs of this court will be paid by complainants. The future costs will be adjusted by the chancellor on final settlement of the case.