W. B. EMERT *et al. v.* HUGH G. BLAIR *et al.*

(*Knoxville.*    September Term, 1908.)

1. WILLS. Devise of life estate, with a limited, restricted, or qualified power of disposition, creates a life estate, and not a fee, and allows remainder over to take effect.

Where a testator, in order to afford his wife a comfortable and secure support during her life out of his estate, devised and bequeathed to her for her natural life all his property, to have, manage, and use for her support during her life, and at her death to be divided among his lawful heirs and distributees, and gave her power to sell any of the property for the use aforesaid, but restricted her from selling his realty in Sevierville, unless in her judgment her support shall absolutely require it, and also gave her the right, if the profits in her judgment were insufficient for her support, to convert to her own use so much of his estate as will be sufficient for the purpose, the balance, if any, to belong to his estate at her death, in whatsoever shape it may be found, the widow took a life estate, with a limited power of disposition, and not a fee. The restricted and qualified power of sale limits the estate of the widow to a life estate, and allows the remainder over to take effect. (*Post, pp.* 242-258.)

Cases cited and approved: Pillow v. Rye, 1 Swan, 185; Downing v. Johnson, 5 Cold., 230; McGavock v. Pugsley, 12 Heisk., 690; Bradley v. Carnes, 94 Tenn., 36; Smith v. Bell, 6 Pet., 68.

Cases cited, approved, and distinguished: Bean v. Myers, 1 Cold., 226; Hamilton v. Insurance Co., 6 Lea, 402; Bradley v. Carnes, 94 Tenn., 27; Meacham v. Graham, 98 Tenn., 190; Clark v. Hill, 98 Tenn., 300; Brien v. Robinson, 102 Tenn., 157.

2. SAME. Devise of life estate to widow to manage and use for support, and to go to testator's heirs at her death, constitutes her a trustee for such heirs, when.

Where a testator, in order to afford his wife a comfortable and secure support during her life out of his estate, devised and

Emert v. Blair.

bequeathed to her for her natural life all his property, to have, manage, and use for her support during her life, and at her death to be divided among his lawful heirs, in whatsoever shape it may be found, the widow held the property during her life in trust to' use for her support, and to preserve that portion of the estate and the increase thereof, which she did not require for her support, for the testator's heirs. (*Post, pp.* 243, 244, 258-264.)

Cases cited and approved: King v. Sharp, 6 Humph., 55.

Cases cited, approved, and distinguished: Hunt v. Watkins, 1 Humph., 498; Bonner v. Bonner, 7 Humph., 436; Vaden v. Vaden, 1 Head, 444, 450; Forsey v. Luton, 2 Head, 183; Vancil v. Evans, 4 Cold., 345; McHaney v. McNeilly, 10 Heisk., 539; Swan v. Finney, 4 Bax., 30; Adylett v. Swope, 1 Shannon's Cases, 447.

3. **SAME. Cost of suit for construction of will to be paid out of the estate.**
Where a suit by the remaindermen, as the heirs of the testator, against the heirs of the life tenant, presents a proper case for the construction of a will, the costs will be adjudged to be paid out of the estate of the testator. (*Post, p.* 264.)

FROM KNOX.

Appeal from the Chancery Court of Knox County.— JOSEPH W. SNEED, Chancellor.

JEROME TEMPLETON and W. G. CATON, for complainants.

121 Tenn—16

PICKLE, TURNER & KENNERLY, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

Complainants, who are the heirs at law of John B. Emert, deceased, bring this bill against the heirs at law of his widow, Martha J. Emert, to recover certain property alleged to belong to the estate of the said John B. Emert, deceased. Complainants claim the property under the will of the said John B. Emert, while the defendants claim the property as the heirs at law and distributees of Martha J. Emert, deceased, widow of John B. Emert. The deceased, John B. Emert, left a widow surviving him, viz., Martha J. Emert, but no surviving children. The complainants are F. L. Emert, Sr., a surviving brother of John B. Emert, deceased, and certain children and descendants of children of brothers and sisters of the said John B. Emert.

As already stated, the defendants to this bill are the only heirs at law of the said Martha J. Emert, deceased. The contention of complainants is that under the will of John B. Emert, deceased, the widow, Martha J. Emert, only took a life estate in his property, and upon her death the estate was to be divided among his heirs at law and distributees, according to the laws of descent and distribution.

The contention on behalf of the defendants is that under the proper construction of the will of John B. Emert, deceased, his widow, Martha J. Emert, deceased,

took an absolute title to all of the property therein devised, and that upon her death it descended to her distributees and heirs at law, under the laws of Tennessee.

It is obvious, therefore, that the questions presented must be determined upon the proper construction of the last will and testament of said John B. Emert, deceased, which is in the words and figures following, towit:

"First.   All my just debts shall be paid.

"Second.   In order to afford my wife, Mrs. Martha J. Emert, a comfortable and secure support during her life out of my estate, I hereby devise and bequeath to her, for the term of her natural life, all my property, real, personal and mixed, to have, manage and use for her support during said time.   At her death said property shall be divided among my lawful heirs and distributees, according to the laws of inheritance and distribution in Tennessee.

"Third. To more effectually provide for my said wife, I hereby invest her with power to sell and convey any of said property for the use aforesaid.   This power is given because some of said realty consists of mountain farms which may fail to sufficiently contribute to my wife's support.   My realty in Sevierville my wife shall not sell, unless, in her judgment, her support absolutely requires the same.   Any of my other realty my wife may sell if in her judgment she can then make said property more conducive to her support.   In case of sale of any of said realty, the proceeds shall be loaned out with

good security or reinvested, the interest or income to be applied to her support, the principal or property so purchased to belong to my estate. But if my wife's comfortable support should in her judgment demand an appropriation by her of part or all of said principal or property, she is hereby vested with such power.

"Fourth. Only such of my personal property shall be sold by my executors in administering my estate as shall meet the approbation of my wife. She shall at once have the possession and use of the balance. Any money, after paying debts and expenses in administration, my wife may use as provided for as to proceeds of realty.

"Fifth. That there may be no mistake, I here again direct that, at my wife's death, the realty unsold of my estate or, in case my wife exercises the power of sale herein conferred, the proceeds of such sale or sales or the property purchased thereby in case of reinvestment or the remainder of the principal, if any, of the proceeds, in case the principal is diminished, shall belong to my estate, and shall be divided among my lawful heirs and distributees according to the laws of inheritance and distribution in Tennessee.

"My intention is to give my wife the use of my entire estate for her support during her life, or if the profits of my estate are in her judgment insufficient, then to give her the right to convert to her own use so much of my estate as will be sufficient for that purpose, but the balance, if any, to belong to my estate at her death, in whatsoever shape it may be found.

"Sixth.  I hereby nominate and appoint my said wife executrix and M. W. McCown executor of this my last will and testament.  I specially request said McCown to give his attention to the management of said realty outside of Sevierville and to the protection of the same.

"After my debts have been paid, those due me collected, and the administration of the personalty completed, and my entire estate is ready to be turned over to the quiet enjoyment of my said wife, the said M. W. McCown may in his discretion resign, and my wife thereafter exempted from settlements."

Now it is insisted on behalf of the heirs at law of Martha J. Emert, deceased, that while, in the first clause of the will, the testator devises all of his property, real and personal, to his wife, Martha J. Emert, for the term of her natural life, by the subsequent clauses of the will the power of absolute disposition of the entire property was conferred on the widow, and that thus her life estate was enlarged into a fee.   The argument is that by the terms of the will she is authorized to sell and consume for her support, not only the income and profits of the estate, but, at her will and discretion, the entire *corpus*.   It is said that she is made the exclusive and absolute judge of the advisability or necessity of converting the real estate and of using and consuming the personal assets and the proceeds of the realty.   Especial attention is called to the following language of the will, wherein it is provided, after mentioning his realty in Sevierville, as follows:

"Any of my other realty my wife may sell if in her judgment she can then make said property more conducive to her support."

Again:

"But if my wife's comfortable support should in her judgment demand an appropriation by her of part or all of said principal or property, she is hereby vested with such power."

In the fourth clause power is conferred on his wife to make the same use of the personal estate.

Again in the fifth clause he says:

"My intention is to give my wife the use of my entire estate for her support during her life, or if the profits of my estate are in her judgment insufficient, then to give her the right to convert to her own use so much of my estate as will be sufficient for that purpose, but the balance, if any, to belong to my estate at her death, in whatsoever shape it may be found."

Attention is called to the language of the sixth clause as follows:

"After my debts have been paid, those due me collected, and the administration of the personalty completed, and my entire estate is ready to be turned over to the quiet enjoyment of my said wife, the said M. W. McCown may in his discretion resign, and my wife thereafter exempted from settlements."

Counsel cites in support of his contention *Bradley* v. *Carnes*, 94 Tenn., 27, 27 S. W., 1007, 45 Am. St. Rep., 696; *Brien* v. *Robinson*, 102 Tenn., 157, 52 S. W., 802;

*Bean* v. *Myers,* 41 Tenn., 226; *Meacham* v. *Graham,* 98 Tenn., 190, 39 S. W., 12; *Clark* v. *Hill,* 98 Tenn., 300, 39 S. W., 339; *Hamilton* v. *Insurance Co.,* 74 Tenn., 402.

These cases settle the principle that, if the first taker is given an estate in fee or for life, coupled with an unlimited power of disposition, the fee or absolute estate vests in the first taker, and the limitation over is void. We are of opinion, however, that these cases are not applicable in the present instance, since the power of disposition conferred on the widow is restricted, and qualifies the right of sale to the express purpose of providing a support for the wife during her life. The rule is that, if the power is dependent upon a contingency, or if the power be definitely qualified, the estate of the first taker is limited to life, and the remainder over takes effect. *Bradley* v. *Carnes,* 94 Tenn., 36, 27 S. W., 1007, 45 Am. St. Rep., 696.

An analysis of the will of John B. Emert will show:

(1) The widow is given a life estate in all of his property.

(2) A limited power is conferred on her to sell to secure a support.

(3) A limitation over to the testator's heirs.

(4) An express power is conferred on the widow to sell for her own support or for reinvestment.

It will be observed that the second clause of the will contains this language:

"In order to afford my wife, Mrs. Martha J. Emert,

Emert v. Blair.

a comfortable and secure support during her life out of my estate, I hereby devise and bequeath to her, for the time of her natural life, all my property, real, personal and mixed, to have, manage, and use for her support during said time. At her death said property shall be divided among my lawful heirs and distributees, according to the laws of inheritance and distribution in Tennessee."

It is shown by the next clause that a power of sale is conferred on the widow to provide funds for her support, and is therefore a restricted, and not unlimited, power of sale.

The third clause is:

"To more effectually provide for my said wife, I hereby invest her with power to sell and convey any of said property for the use aforesaid. This power is given because some of said realty consists of mountain farms which may fail to sufficiently contribute to my wife's support. My realty in Sevierville my wife shall not sell, unless, in her judgment, her support absolutely requires the same. Any of my other realty my wife may sell if in her judgment she can then make said property more conducive to her support. In case of sale of any of said realty, the proceeds shall be loaned out with good security or reinvested, the interest or income to be applied to her support, the principal or property so purchased to belong to my estate. But if my wife's comfortable support should in her judgment demand an appropriation by her of part or all of said principal or

property, she is hereby vested with such power."

The fifth clause provides as follows:

"That there may be no mistake, I here again direct that, at my wife's death, the realty unsold of my estate or, in case my wife exercises the power of sale herein conferred, the proceeds of such sale or sales or the property purchased thereby in case of reinvestment or the remainder of the principal, if any, of the proceeds, in case the principal is diminished, shall belong to my estate, and shall be divided among my lawful heirs and distributees according to the laws of inheritance and distribution in Tennessee."

"My intention is to give my wife the use of my entire estate for her support during her life, or if the profits of my estate are in her judgment insufficient, then to give her the right to convert to her own use so much of my estate as will be sufficient for that purpose, but the balance, if any, to belong to my estate at her death, in whatsoever shape it may be found."

In *Pillow* v. *Rye,* 31 Tenn., 185, the will provided:

"It is my intention to provide for the comfort and independence of my daughter, Martha W. Keeble, during her natural life"—specifying the property and money which are bequeathed to her."

The will then proceeds:

"But it is my will and intention that said property and money shall be for her sole and separate use during her natural life, free from any debts and charges of any future husband she may have."

The will further provides:

"My object is to make provision for her, and not to postpone her interest to those of my remoter descendants, and if for any cause it becomes necessary for her and her comfort to sell any portion of the principal, it is my wish that it shall be done."

Notwithstanding the power of disposal contained in the will, it was held the daughter took only a life estate. Judge McKinney said:

"The assumption that the clause of the will under consideration confers any such unlimited power of disposal is wholly unfounded. The intention of Mrs. Cooke (the testatrix) is too obvious to admit of any doubt. Her purpose was to make a comfortable provision for her daughter during her life in every event that might happen. . . . The power of sale conferred upon the life tenant is perfectly consistent with the general restriction upon the life owner, and equally consistent with the limitation over, which vests the remainder, subject to be divested as far forth as, upon the happening of the contingency, necessity may demand. This qualification or exception, so far from conferring an unlimited power of disposal, the more clearly excludes all idea of such intention. We hold, therefore, that under the foregoing clause of the will Mrs. Keeble takes only a life estate, with a limited power of disposal, upon the happening of the contingency referred to in the will."

In *Downing* v. *Johnson,* 45 Tenn., 230, the will provided:

Emert v. Blair.

"I will and bequeath to my beloved wife, Sallie Johnson, the whole of my estate, both real and personal, choses in action, etc., for and during her natural life, to be by her freely possessed and enjoyed."

Another clause provided:

"The balance of my property, money or other effects that may be on hand, at the death of my wife, I dispose of in the following manner"—making specific bequests.

Construing this will, this court said:

"We think it was most clearly the intention of the testator to provide for the support and maintenance of his wife out of his property, and to that end he gave her a life estate in it, and declared that it should be freely possessed and enjoyed by her; and, as if anticipating the *corpus* of a portion of it at least must be consumed by his wife in her support and maintenance in her declining years, he only gives such balance as may be on hand at the death of his wife in remainder. Therefore Sallie Johnson, the defendant, is, under the will of her deceased husband, entitled to the possession, use, and enjoyment, during her life, of all the property belonging to her husband at the time of his death, and if her support and maintenance, in her discretion, require it, she may consume the *corpus* of the entire estate, except the land; and, should there be any balance on hand at the death of the wife, it passes, under the will, to the remaindermen."

In *McGavock* v. *Pugsley,* 59 Tenn., 690, the will provided:

"To my beloved wife, Eliza Pugsley, I give and bequeath all the remainder of my estate, of whatsoever kind, real and personal, to be used and enjoyed by her during her natural life, hereby authorizing her to sell or dispose of the same in any way she may deem necessary for the convenience and support of herself and our two daughters; and if at the death of my said wife any part or portion of my said property or effects shall remain, the same to be equally divided between our said daughters or their representatives."

The court said:

"What is the proper construction of the will we have cited? Does the wife take an absolute estate in it by virtue of the power of disposal therein contained, or is it so qualified and limited that the remainder may take effect?"

It was held that the power of sale was to be exercised only when deemed necessary for the convenience and support of herself and the two children, and was not an unlimited power of disposal. The court sustained the validity of the gift over in remainder. *Smith* v. *Bell*, 6 Pet., 68, 8 L. Ed., 322.

It is unnecessary to cite other cases, since we think the principles enunciated in the foregoing citations are conclusive on the questions presented on this will, and show that the widow had only a limited power of disposition for a definite and prescribed purpose, and that therefore the remainder over to the testator's heirs was good.

Emert v. Blair.

In order to understand and intelligently decide the questions raised on the assignments of error, it will be necessary to make a further statement of fact.

It appears that John B. Emert departed this life about the 10th day of April, 1884, leaving the will in question, wherein he appointed M. W. McCown executor and his widow, Martha J. Emert, executrix, but neither qualified as such, and one R. H. Andes qualified as administrator with the will annexed. It appears that he paid to the widow in various installments from time to time the sum of $2,169.40 out of the personal assets of the estate. On the 8th day of April, 1884, a few days before his death, the testator entered into a partnership contract with two of his nephews, F. L. Emert, Jr., and W. W. Emert. The contract was in writing, and the salient features are:

(1) That the business was to continue for a term of five years, beginning May 1, 1884, under the firm name and style of Emert & Emert Bros.

(2) John B. Emert to furnish the capital of $4,500 and storehouse and furniture rent free during the term of the partnership.

(3) F. L. and W. W. Emert were to conduct the business, devoting their entire time and attention to it.

(4) John B. Emert was permitted to withdraw from the business per year $600, while F. L. and W. W. Emert were limited to $300 each.

(5)    The death of John B. Emert before or during said term of partnership shall not terminate the business, but it shall be continued by John B. Emert's personal representative until the expiration of said term of five years, when the business shall be closed and wound up as speedily as practicable.

(6)    From the net assets shall be paid, first, to John B. Emert or his personal representative said original capital of $4,500, without interest, and the balance shall be distributed, one-half to said John B. Emert and one-fourth to F. L. and W. W. Emert each.

It appears the testator died before the partnership business was launched; but it was carried on under the terms of the partnership contract by the widow, Martha J. Emert, and the two nephews, for the period of five years, when it was closed and settled.  The widow was paid the sum of $4,500, the amount of the original capital put in by John B. Emert, and also her one-half of the profits of the business, estimated at $3,200; but the exact amount of these profits does not definitely appear from the record.

It appears that during the continuation of this partnership the widow also engaged in a logging business as a separate and independent undertaking, and realized profits therefrom which are estimated at $1,600.  She also engaged in mercantile business on her own account with one of the nephews of J. B. Emert, and afterwards with one of her own nephews, in which it is claimed she made profits; but the exact amount does not appear.

Emert v. Blair.

It further appears that on June 6, 1889, the widow loaned to J. C. J. Williams $6,000, evidenced by his note of $6,480, maturing two years from date, with interest, which was secured by a deed of trust on certain lands in Knoxville, Tennessee. It is a controverted question on the record whether this loan to Gen. Williams was made from money of the estate of John B. Emert or from the individual means of said widow. It is suggested by counsel for defendant that it is probable that it was derived from both sources. The loan was made in the widow's individual name, and the estate does not appear to be connected with it on the face of the papers. Gen. Williams made default in the payment of this loan, and there was a foreclosure of the deed of trust, and at the sale the property was bid in by Mrs. Emert for her own use for the sum of $4,680. The sale was confirmed, and the title was regularly divested and vested in Mrs. Emert. It appears that Mrs. Emert afterwards sold off a portion of this Williams land, and received about $7,000 in money and notes from the sales made, and at the time of her death she still owned portions of this land.

It also appears, from an exhibit to defendant's answer, that at the date of her death the said widow had on hand in the shape of a certificate of deposit, representing money in bank, and also notes for money loaned out, about $6,301.62.

It thus appears that when Mrs. Emert died she had on hand in money and in notes the total sum of $12,-

525.62. It also appears that after the death of the testator the widow sold two pieces of unimproved land belonging to the estate—one for $15, October 31, 1893, and the other for $500, January 11, 1905. It does not appear what disposition was made of the proceeds of these sales, but they do not appear to have been reinvested. There is proof in the record tending to show that Mrs. Emert had been advised that she had title to the personal estate and to the proceeds of the real estate sold by her, and that she could make any disposition of it she saw proper.

On the final hearing the chancellor decreed as follows:

"(1)   That under said will Mrs. Martha J. Emert took only a life estate in the property of her husband, John B. Emert, and that all of said estate, including all accretions and profits made thereon by her and all property acquired by her out of its assets, and said accretions and profits passed on her death to his heirs; that she only had the right to her support out of said estate; and that all property purchased by her became a part of said estate and passed under said will, together with all of its profits, income, and increase.

"(2)   That the widow accepted the benefits of said will, and became thereby a trustee under it, and was bound to execute the trust on behalf of said testator's heirs.

"(3)   That neither she nor her personal representative was bound to account for what she had used and consumed of said estate.

"(4)    That said Williams land was purchased by her in trust for said estate, and that, in so far as the same had not been sold by her, she held it in trust for the complainants, and that said land, as well as the money and other property on hand at her death, passed to complainants.

"(5)    That the suit brought by the defendants for the partition of said land among themselves as her heirs be enjoined.

"(6)    That defendants be enjoined from setting up or claiming title to said Williams lands.

"(7)    That a true statement of the property received by her administrator and her agent had been rendered, and that all of said property had been derived from the estate of John B. Emert and belonged to his heirs and distributees, and that, if the widow had a separate estate, the amount of it had not been shown, and that it had been mingled with the estate of John B. Emert, and could not now be separated, and the same would pass to complainants; that no account with the defendants was necessary, but writ of possession was awarded of all property and assets in their hands."

It should have been stated that during the progress of the cause a receiver was appointed, and the administrator of Mrs. Emert and her agent and attorney in fact, who had possession of a part of her assets, were ordered to turn the same over to the receiver, which was done.

121 Tenn—17

The defendants appealed from the decree of the chancellor, and have made eleven assignments of error.

We have already disposed of the first assignment of error, and held that Mrs. Emert, the widow, took only a life estate, and not the absolute fee in the property devised by her husband.

The next assignment is that the chancellor erred in holding that the widow was an active trustee for the management of said estate for the benefit of said remaindermen, and that all the income, interest, profits, and increase of said estate, together with all property which she purchased with its assets, and its proceeds, profits, income, and increase, inured to the benefit of and passed to said remaindermen. It is said there is nothing in the will indicating that the testator intended to impose upon his widow the burden of a trusteeship for his heirs, or any duty to increase and accumulate said estate for their benefit. It is claimed that, so far from this purpose being disclosed, it distinctly appears that the comfort and support of his widow was a matter of deep solicitude to the testator, and to that end he gave her the use of all of his property, and authorized her, if her necessities required, in the exercise of her own discretion, to use the *corpus* of said estate. As an evidence of the testator's intention to allow his wife to use all of his property, he speaks of the time when his entire estate is ready to be turned over to the quiet enjoyment of his said wife, and that thereafter his wife will be exempted from settlements.

In the case of *King* v. *Sharp*, 25 Tenn., 55, a tenant for life is held to be quasi trustee for the remaindermen, and that "he may dispose of the property at pleasure, so that he does not thereby injure the inheritance in the remainder. The tenant is to have this amount to be used for his benefit during life, but so to be used as that the property shall not be destroyed and the remainder defeated.

In *Vaden* v. *Vaden*, 38 Tenn., 450, in referring to *Bonner* v. *Bonner*, 26 Tenn., 436, the court said:

"It was argued by counsel in that case, as it is here, upon the authority of *King* v. *Sharp*, 25 Tenn., 55, and other authorities, that the tenant for life was entitled to have the original fund, or the property, or that in which it might be invested, or for which it was exchanged, at his election, upon the general principle on that subject applicable to trustees and beneficiaries. But this argument was considered unsound by the court.

. . .

"He [the life tenant] may use it, and make all the profit on it he can, with due regard to its safety and protection. To that extent he may be called trustee; but he is not so in the sense of a pure trust, as a personal representative, guardian, etc." In cases of pure trust, the fund is held solely for the benefit of the *cestui que trust,* but a tenant for life has a limited interest in the fund, with a right to use and enjoy the profits of it, without accounting for the same to any person. If a fund be given to a person for life, with remainder

over to another, the tenant for life has the right to use and employ said fund in any way he chooses, if he does not endanger its safety. If the tenant for life invests the fund in the purchase of slaves or other property, the title vests absolutely in him. The remainderman has no right to or interest in the property, except so far as it may be held upon a bill for that purpose as a security for the fund.

In the *Vaden Case* it was held that in case of investment of money held for a party for life in slaves the remainderman had no right to the slaves so purchased, but only to the money so invested, at the termination of the life estate, that the holder of the life estate is not a trustee for the remaindermen as a guardian, personal representative, or pure trustee is, and the fund could not be followed in its new form.

In *Adylett* v. *Swope*, 1 Shan. Case., 447, it was held: "Where a life tenant of a fund invests the fund, or exchanges the property which he holds subject to a remainder, in other property, this property does not take the place of the fund so invested in it, and the remainderman is not entitled to elect whether he will take the fund or the property purchased with it. He is entitled only to the money invested in it, at the termination of the life estate." *McHancy* v. *McNeilly*, 57 Tenn., 539.

In *Swan* v. *Finney*, 63 Tenn., 30, it was held: "On the first hypothesis, that is, investment by a life tenant of money, in which such party had only a life interest in lands, it is settled by authority,

and probably on sound principle, that no trust results or is implied in favor of parties having the remainder interest"—citing *Vaden* v. *Vaden,* 38 Tenn., 444.

It is further said that the tenant for life is entitled absolutely to the entire fruits of the life estate. *Forsey* v. *Luton,* 39 Tenn., 183; *Vancil* v. *Evans,* 44 Tenn., 345; *Hunt* v. *Watkins,* 20 Tenn., 498.

It is said, however, that the principle announced in these cases is not applicable in the present instance, since under the will of John B. Emert a life estate was given the widow in his property for a comfortable and secure support, and that the widow had no right to use any part of the estate, except for this specific purpose.

We are constrained to hold that this is the proper construction of John B. Emert's will. This purpose is disclosed everwhere in the will, and we find no provision under which she can take any part of the estate, except for the purpose of a comfortable and secure support. This purpose is disclosed in the first item of the will, namely:

"In order to afford my wife, Mrs. Martha J. Emert, a comfortable and secure support during her life out of my estate, I hereby devise and bequeath to her, for the term of her natural life, all my property, real, personal and mixed, to have, manage and use for her support during said time."

He then proceeds to devise the remainder of his estate, after his wife's death, as follows, viz.:

"At her death said property shall be divided among my lawful heirs or distributees, according to the laws of inheritance and distribution in Tennessee."

The devise to the wife is coupled with the limitation that she is to "manage it and use it for her support" during said time, and no purpose is disclosed to give her any part of the estate absolutely for any other purpose. It is very clear, therefore, that all the personal property and proceeds from the sale of real estate held by her at her death, and which was necessary for her support, passed with the *corpus* of the estate to the remaindermen. The limited power of disposition of the estate conferred upon her was for the purpose of securing to her a comfortable and secure support during her life, and except for this purpose and for the purpose of reinvestment she had no power to convert the real estate or to appropriate the personal property.

An examination of the cases cited by counsel for defendant in support of the proposition that Martha J. Emert became the absolute owner of the rents, income, profits, and increase of the estate of her husband shows that they are cases where an absolute life estate had been given in specific property; but in the present case the property is devised to the wife for a specific purpose, and she is nowhere authorized to receive or use any part of the property except for this purpose. The widow, therefore, holds the property in trust "to have, manage and use for her support during her life."

Mrs. Emert, by accepting the benefits of the estate of her husband, was thereby constituted a trustee to manage said property, collect rents, sell property for reinvestment for the purpose of securing for herself a comfortable support out of the estate, and to preserve that portion of the estate which she did not require for herself for the heirs of John B. Emert. The fifth clause of the will clearly discloses the purpose for which his wife should hold his estate, as follows:

"That there may be no mistake, I here again direct that at my wife's death the realty unsold of my estate or, in case my wife exercises the power of sale herein conferred, the proceeds of such sale or sales or the property purchased thereby in case of reinvestment or the remainder of the principal, if any, in case the principal is diminished, shall belong to my estate, and shall be divided among my lawful heirs," etc.

The testator again discloses the twofold purpose for which his wife could hold his property, as follows:

"My intention is to give my wife the use of my entire estate for her support during her life, . . . to belong to my estate at her death, in whatsoever shape it may be found."

It is true that under this will the amount required for the support of the widow is left entirely to her judgment and discretion, but after she has been provided a comfortable support, all that remains on hand at her death under the express terms of the will, passes to the remaindermen.

It is suggested on the record that the widow had a separate estate of her own, independent of anything that she acquired from the estate of her husband; but there is no proof that will justify the court in holding that any of the funds on hand at the death of the widow or real estate held in her name was acquired by her as a separate estate. We are of opinion that the J. C. J. Williams tract of land was purchased with funds belonging to the estate of John B. Emert, and that the chancellor was correct in holding that the notes due from the purchasers of this land, and on hand at the death of Mrs. Emert, and also the unsold land on said tract, passed to the estate of John B. Emert. It is unnecessary to go into the details of the property on hand at the death of the widow, since our examination of it has satisfied us that it was all acquired from the estate of her husband, and that there is no provision in the will under which the widow could hold it, except for the purposes of support.

It results, in our opinion, the decree of the chancellor was correct, and it is in all respects affirmed. We think, however, this is a proper case for the construction of the will of John B. Emert, and that the costs should be paid out of the estate, and we so decree.