HAIR v. FARRELL et al.—103 S. W. (2d) 919.

Western Section.   March 20, 1936.

Petition for Certiorari denied by Supreme Court, February 13, 1937.

H. P. Wood, of Selmer, and J. I. Galbraith, of Henderson, for complainant.

M. E. Lee, of Selmer, for defendants.

SENTER, J. This is a suit by W. H. Hair, administrator, and sole heir and distributee of W. M. Hair, deceased, against J. F. Farrell, administrator of the estate of Mrs. Sara E. Hair, deceased.

The bill proceeds upon the theory that all of the property and assets which came into the hands of Farrell as administrator of the estate of Mrs. Sara E. Hair, who predeceased her husband, W. M. Hair, became the property of W. M. Hair upon the death of his said wife, she having died intestate and without leaving surviving bodily heirs, and that complainant as the administrator of the estate of his deceased father, W. M. Hair, was entitled to recover of defendant Farrell, and the surety on his administrator's bond, the value of all said assets, amounting to something over $5,000.

The Fidelity & Deposit Company of Baltimore, surety on the administration bond of Jasper Farrell, failed to file an answer, and an order pro confesso was taken against it.

The defendant Jasper Farrell filed an answer by which he admitted that he had qualified as the administrator of Mrs. Sara E. Hair, deceased, but denied that complainant was entitled to recover

the value of the assets which came into his hands, and which he then held.

The answer of this defendant alleged in substance that before the marriage of Mrs. Sara E. Hair to W. M. Hair, she was the widow of M. W. Farrell, deceased, who died testate in 1912 without leaving any bodily heirs. That by the terms and provisions of his will he left all his property, including his farm lands and all personal property, consisting of household goods and furnishings, livestock, farming implements, and machinery, notes and accounts and cash on hand, and cash in the bank, to his said widow, the same to be used by her for her natural lifetime for her support and maintenance, and with specific limitations that she was to use said property and the benefits therefrom for her support and maintenance alone, and that she was given the right to sell and dispose of certain of the property under conditions set forth in the will, if it became necessary to do so for her proper support and maintenance.

He further alleged that by the terms of the will all of the unconsumed portion of the estate of the said M. W. Farrell, and the proceeds therefrom not used and consumed by the said widow, at her death was to be divided among the defendant Jasper Farrell and his two sisters, Mrs. Thankful Wharton and Mrs. Lessie Bolton.

This defendant denied that he had in his possession any personal property belonging to the estate of Mrs. Sara Hair, or that had ever belonged to her. He denied that she owned any property at the time of her death in her own right. He denied that any property now in his hands or that was ever in the hands of Mrs. Sara Hair ever belonged to W. M. Hair, deceased, or that it now belongs to the complainant.

He alleged that Mrs. Sara E. Hair held some property as a life tenant under the will of her former husband, but that all interest in said property reverted to defendant and his two sisters under the terms of the will of M. W. Farrell upon the death of Mrs. Sara E. Hair.

At the hearing of the cause the chancellor sustained the bill and decreed a judgment in favor of complainant and against the defendant and surety on his administrator's bond for the sum of $5,108.39, the amount found by the chancellor to be the value of the property going into the hands of Jasper F. Farrell belonging to Mrs. Sara E. Farrell at the time of her death, but further decreed that by consent of complainant, made in open court, that the defendant have credit on said money judgment for any items in his inventory of the estate which are still in the hands of said Jasper F. Farrell as administrator, and that the amounts listed by him in said inventory and charged to him in said settlement. From this decree the defendant Jasper Farrell prayed and was granted an appeal to this court. The appeal has been duly perfected and errors assigned.

The principal question presented on this appeal involves the construction of the will of M. W. Farrell, deceased, and other questions which will be later considered.

The will is as follows:

"Last will and testament of M. W. Farrell

"I, M. W. Farrell, of McNairy County, Tennessee, do make and publish this my last will and testament, hereby revoking all former wills by me at any time made.

"First:

"I direct that all my just debts, including funeral expenses, and expenses of Administration, be paid by my Executor hereinafter named.

"Second:

"I will and devise that I give and bequeath to my present beloved wife all the lands, tenements, and real estate that I own at my death including the place I now reside on, together with all the household goods and furnitture in the house in which I live, and all of the personal property I am possessed of, at my death, such as bonds, notes, accounts, horses, mules, cattle, sheep, hogs, farming implements, and all other personal property, matters not what its character is, and all of said property, is willed by me subject to limitations and conditions as follows:

"(A) That she is to have the absolute control of during her natural life all the lands I own at my death, so as to cultivate and have cultivated, and receive the full benefit of the rents and profits derived therefrom, to be used by her for her own support and maintenance.

"(B) That she is to make use of so much of the timbers on said lands as is necessary to keep the farm and its buildings in good repair, and for all firewood purposes, and if with frugal management and economical living, said rents profits, and by using the other property, be insufficient to meet the demands of her living, then she is empowered by the terms of this Will to sell timbers, or small portions off of said land so as to support herself in as comfortable a manner as the demands of nature, society, and the surrounding circumstances in life requires.

"(C) That during the life of my wife, she is to have, and is hereby authorized to make use of all personal property and to control the same absolutely, and to sell and convert into money, at any time during her life it becomes necessary for her to do so, to maintain herself economically; but the restrictions of this will prevent her from going further.

"(D) That I do not intend by any of the stipulations and terms of this Will to restrict, or to limit my wife in the free use of any and all of my property, so long as she does not waste and squander

the same, it being my desire to save for the benefit of the children hereinafter named only the balance of my estate which remains unconsumed at her death.

"Third:

"And after my death, and at the death of my wife, it is my further desire, that all of my property and estate in existence, both personal and real, go to and the right and title to all of the same, under and by virtue of the terms of this instrument, at once vest directly and absolutely in Jasper Francis Farrell, Lauruna Thankful Farrell, and Lessie Elizabeth Farrell to be divided equally each to receive one ($\frac{1}{3}$) third; unless my Wife should have bourne to us either while we sustain to each other our present marriage relationship, or by subsequent marriage of either of us, a child, or children, then said unborn child or children, that may be born in the future, is or are to have an interest, and receive an equal division in value of all my estate, with said above named children who are my nieces and nephew. That is to say, if only one child is born, said child under the terms of this will, will be entitled to one-fourth ($\frac{1}{4}$) interest, if two are yet born, each one-fifth ($\frac{1}{5}$) interest, and so on.

"(A) At any time after my death should my present wife remarry, and should her husband by said remarriage, commence to, or attempt to squander my estate, then said nieces and nephew, and unborn child or children are authorized by the terms of this will to force a division of all my property in such a manner as to leave to my wife only a child's part in said estate, and the balance to be divided equally among said children, according to the stipulations above set out.

"(B) The conditions imposed on said children, in order that they may become beneficiaries by virtue of this will, is that they continue to be kind and obedient to my wife and I as along as we live, and as long as they remain with us that they perform such service and labor as we require of them not to be greater, or harder service than a prudent and kind father and mother would require of their own children.

"Fourth:

"I hereby nominate and appoint Jasper Francis Farrell sole executor of this my last will and testament.

"M. W. Farrell, Testator.

"Signed by the said M. W. Farrell, as and for his last will and testament, in the presence of us, the undersigned, who, at his request, and in his sight and presence, have subscribed our names hereto as the attesting witnesses, the day and date above written, This Jan. 1st, 1912."

It appears that there had been a proceeding in the county court of McNairy county to have Jasper F. Farrell removed as admin-

istrator of the estate of Mrs. Sara E. Hair, and certain depositions were taken and filed in that cause. It does not appear what disposition was made of that cause, but apparently it was abandoned, and this suit filed. However, there is a stipulation contained in the record that the depositions taken in the county court matter could be used as evidence in this cause.

It appears that M. W. Farrell died testate in 1912. Jasper F. Farrell did not qualify as the executor of the estate, he having been named in the will as executor, but the widow, Mrs. Sara E. Farrell, qualified as the administratrix of said estate with the will annexed. She filed a partial inventory of the estate which came into her hands and in which she listed certain notes amounting to about $1,800, certain cash on hand, and some other personalty.

At the time of the death of M. W. Farrell he owned considerable farm lands on which he lived. He owned a considerable quantity of household goods, several head of mules, and several head of jacks and jennies, about twelve head of cattle and fifteen or twenty hogs, and a lot of feedstuff. He also owned a considerable lot of farm implements and farm machinery, all of which was used in connection with his farming operations. He did not owe any debts, other than funeral expenses. The debts, including the funeral expenses, were settled by the administratrix and she entered into possession of all the property. The record does not show just what she did with all this livestock, or to whom she sold it, if she did sell it, or the price she received for it. She did sell about $300 worth of household goods and furnishings and retained the balance. She continued to occupy the farm until 1918, when she married W. M. Hair.

There is evidence in the record to the effect that after she married W. M. Hair, he provided her support. The defendant, who was a nephew, and his said two sisters, who were nieces of M. W. Farrell, had for a number of years lived in the home of M. W. Farrell, and the two sisters lived there until they married. Jasper Farrell lived with his aunt, Mrs. Sara E. Farrell, and seemed to be her adviser and assisted her in the management of the farm. After she married W. M. Hair in 1918, she sold her life estate in the farm lands to her nephew, the defendant Jasper F. Farrell, for the price of $1,000.

There is evidence in the record that she sold some of the timber off of the land before the conveyance was made to Jasper F. Farrell, the exact value of which is not definitely shown. It appears that she continued to loan money, and it is fairly inferable from the record that as the notes which came into her hands as a part of the estate were collected, she reloaned or reinvested the mony. She assumed the full control and management of the property which was left to her. She made some gifts to the two nieces, a-

mounting to about $600 each. These gifts were made apparently for the purpose of equalizing these two nieces with her nephew, Jasper F. Farrell, on the theory that she had sold to Jasper F. Farrell her life estate in the farm lands at less than the value thereof.

At her death she owned personal property consisting of notes, money, etc., amounting to about $5,400, and out of which her burial expenses and other expenses were paid.

There is evidence in the record to the effect that at the time of the death of Mrs. Sara E. Hair, her then husband, W. M. Hair, suggested to Jasper F. Farrell that he thought the burial expenses should be paid out of what money or property she had in her hands at the time of her death.

There is also evidence in the record that among other property which Mrs. Sara E. Hair had in her possession at the time of her death was an old cow and a young cow, and also an automobile. It appears that W. M. Hair suggested to Jasper F. Farrell, after the death of Mrs. Sara E. Hair, that he thought he was entitled to the young cow and the automobile. The young cow was the calf of the old cow. The old cow was of but little or no value. He also suggested to Farrell that he thought he was entitled to the automobile, since an old automobile belonging to Mrs. Hair had been sold or exchanged for a new automobile and that he had paid the difference.

It appears that this was all of the estate that W. M. Hair requested. This request was agreed to by Farrell and he had prepared a document to be signed by W. M. Hair, and it was signed by W. M. Hair, which is as follows:

"For a valuable consideration paid to me by Jasper F. Farrell, administrator of the estate of Mrs. Sara Hair, deceased, my late wife, I, William Hair, hereby waive any and all claims I might have to any further part of any personal property the said Mrs. Sara Hair left at her death in favor of the said J. F. Farrell, Mrs. Thankful Wharton, and Mrs. Lessie Bolton, heirs at law, and beneficiaries of the will of M. W. Farrell, deceased."

The above document was signed by W. M. Hair in the presence of his son, the complainant, and was witnessed by one R. E. Plunk. The introduction of this document as evidence was excepted to, and the exception was sustained. This action of the chancellor is made the basis of certain of the assignments of error and will be later referred to.

There is undisputed evidence in the record that at the time of the death of her former husband, Mrs. Sara E. Farrell did not own any property in her own right. There is no evidence in the record to the contrary. There is also evidence in the record to the effect that she did not acquire any property from any other source after the death of her first husband.

We think the above facts are sufficient upon which to pass to a consideration of the construction of the will of M. W. Farrell.

█ █ It is an elementary rule of will construction that the intention of the testator will be given effect unless it contravenes some rule of property or public policy. We think the will in question reflects the clear intention of the testator to make ample provision for the proper support and maintenance of his wife during her lifetime. This intention is expressed in several items of the will. He also makes it clear that she is to have the full and unlimited use and control of the property and the management of the same, both real and personal, for her lifetime, but with the express restriction that such use of said property shall be for her proper support and maintenance. and for no other purposes or use.

He also makes clear his intention that she shall so use the property and control the same that any portion unconsumed by her during her lifetime shall, at her death, be absolutely vested in the nephew and two nieces named. He also clearly expresses his intention that she shall live economically and that she shall not waste the estate, but after providing for herself out of the income of the property, and if necessary to that end selling such timber and other property as may be necessary for her support, that all of the estate remaining at her death shall go to the three named persons in remainder.

This intention by the testator is clearly reflected by the terms and provisions of the will. We also think that the record shows that Mrs. Hair so understood and construed the will, and she, on more than one occasion. gave expression to the thought that at her death all that remained would pass under the will to the nephew and two nieces of the testator. She so dealt with them.

While the record does not show just how much annual income she received from this estate up to the time she conveyed her life interest in the farm to the defendant Farrell, several witnesses testified that they knew what livestock and farming implements and machinery and personal effects M. W. Farrell owned at the time of his death. While the value of this property is not shown by very satisfactory evidence. we think that the evidence does show sufficiently that this personal property, not including the notes, accounts, and cash, was fairly worth approximately $3,500. The farm was well supplied with all modern farming machinery necessary to properly operate a farm of this size. Most of the mules were young, and the jacks and jennies are shown to have been valuable, and also the cattle.

█ The learned chancellor, in his finding of the facts as set forth in the decree. held that it was not shown that any of this personal property was still in the hands of Mrs. Hair at the time of her

death, and that it was not shown that any part of the estate of M. W. Farrell was unconsumed at the time of her death, and that the personal property in the possession of Mrs. Hair at the time of her death did not represent any of the property that passed under the will.

To this conclusion we cannot agree. The uncontradicted evidence in the record is to the effect that at the time of the death of her husband Mrs. Hair did not own any property of any kind in her own right. It is also shown that she did not receive any property from any other source after the death of her first husband. She was in complete control of all the property. She used it and managed it as she saw fit, and the only logical inference could be that whatever personal estate that she owned at the time of her death was the proceeds of the M. W. Farrell estate.

The complainant did not offer any evidence to show that Mrs. Hair ever acquired any property of any kind or character from any other source, and all the proof, as above stated, is to the effect that she did not acquire any property from any other source from the date of the death of her first husband to the date of her death. From 1918 up to the date of her death in 1933 she was supported by her second husband. In this situation it was not necessary for her to expend any of the revenues or income from the estate of her former husband for her support and maintenance.

The record does not show when she sold the livestock and farming machinery, or at what price. It is reasonable to infer that she did sell this property off from time to time. Certainly the cattle were either sold, or a considerable increase would have resulted if the cattle had been held until they died. It was certainly not in the contemplation of the testator that she would hold the livestock and farming machinery and implements indefinitely. These would be sold or disposed of or used in the operation of the farm, and re-supplied when necessary out of the proceeds of the estate. This could be the only logical interpretation to be given to the intention of the testator. and, in fact, she was given such power under the terms of the will.

We cannot escape the conclusion that what personal property she had in her possession at her death was acquired by her out of the estate of her deceased first husband. She was. no doubt, diligent. frugal. and economical, and it is very probable that the entire income from the estate was not used for the support and maintenance of herself.

Since the will. by express terms, restricts her rights in the estate to a proper support and maintenance during her lifetime, this constituted her sole rights in the property.

The intention of the testator in the construction of a will

is to be gathered from the entire document, and the words used therein and the necessary inferences which result from their use. A life estate with power of disposition only so far as necessary for reasonable and proper support, with specific restriction that the right to use and control or to dispose of the property is limited, carries the limitation to the express purpose stated in the will. See Emert v. Blair, 121 Tenn. 240, 118 S. W. 685, 690, and cases cited therein. Trustees, etc., v. Mize, 181 Ky. 567, 205 S. W. 674, 2 A. L. R. 1237, and notes thereto.

▆ Where the will vests an unconditional life estate with provision for remainder over at the death of the life taker, the life tenant is entitled to all of the income derived from the estate during her life tenancy and such unexpended income at her death constitutes a part of her estate, and does not pass to the remaindermen under the will. But this rule does not apply where the enjoyment of an estate for life is specifically limited to the necessary support and maintenance. King v. Sharp, 6 Humph. (25 Tenn.) 55; Vaden v. Vaden, 1 Head (38 Tenn.) 444, 450; Bonner v. Bonner, 7 Humph. (26 Tenn.) 436; Emert v. Blair, supra; Adylett v. Swope, 1 Shan. Cas. 446, 447.

In King v. Sharp, supra, it was held that a tenant for life is held to be a quasi trustee for the remaindermen, and that he may dispose of the property at pleasure, so that he does not thereby injure the inheritance in the remainder. The tenant is to have this amount to be used for his benefit during life, but so to be used as that the property shall not be destroyed and the remainder defeated.

While in Vaden v. Vaden, supra, it was said:

"It was argued by counsel in that case, as it is here, upon the authority of King v. Sharp, 6 Humph. [25 Tenn.] [55], 56 and other authorities, that the tenant for life . . . was entitled to have at the original fund or the property, or that in which it might be invested or for which it was exchanged, at his election, upon the general principle on that subject applicable to trustees and beneficiaries."

In that case it was further held that the life tenant may use the estate and make all the profit on it that he can by using due regard as to its safety and protection. To that extent it was held that he may be called trustee; but he is not so in the sense of a pure trust, as a personal representative, guardian, etc. In cases of pure trust, the fund is held solely for the benefit of the cestui que trust, but a tenant for life has a limited interest in the fund, with a right to use and enjoy the profits of it, without accounting for the same to any person.

In the case of Emert v. Blair, supra, the court reviews the cases of Vaden v. Vaden, supra, and Adylett v. Swope, supra, and in

which cases it was held that in case of investment of money held for a party for life in slaves the remainderman had no right to the slaves so purchased, but only to the money so invested, at the termination of the life estate, that the holder of the life estate is not a trustee for the remaindermen as a guardian, personal representative, or pure trustee is, and the fund could not be followed in its new form.

And as in Adylett v. Swope, supra, wherein it was held:

"Where a life tenant of a fund invests the fund, or exchanges the property which he holds subject to a remainder in other property, this property does not take the place of the fund so invested in it, and the remainderman is not entitled to elect whether he will take the fund or the property purchased with it. He is entitled only to the money invested in it. at the termination of the life estate." McHaney v. McNeilly, 10 Heisk. (57 Tenn.) 535, 539, and Swan v. Finnev. 4 Baxt. (63 Tenn.) 26, 30.

In Emert v. Blair, after reviewing these several cases the court said:

"It is said, however, that the principle announced in these cases is not applicable in the present instance, since under the will of John B. Emert a life estate was given the widow in his property for a comfortable and secure support. and that the widow had no right to use any part of the estate. except for this specific purpose.

"We are constrained to hold that this is the proper construction of John B. Emert's will. This purpose is disclosed everywhere in the will. and we find no provision under which she can take any part of the estate. except for the purpose of a comfortable and secure support. This purpose is disclosed in the first item of the will. namely:

" 'In order to afford my wife. Mrs. Martha J. Emert. a comfortable and secure support during her life out of my estate. I hereby devise and bequeath to her. for the term of her natural life, all my property. real. personal and mixed, to have, manage and use for her support during said time.'

"He then proceeds to devise the remainder of his estate, after his wife's death. as follows, viz.:

" 'At her death said property shall be divided among my lawful heirs or distributees. according to the laws of inheritance and distribution in Tennessee.'

"The devise to the wife is coupled with the limitation that she is to 'manage it and use it for her support' during said time, and no purpose is disclosed to give her any part of the estate absolutely for any other purpose. It is very clear, therefore, that all the personal property and proceeds from the sale of real estate held by her at her death, and which was necessary for her support, passed

with the corpus of the estate to the remaindermen. The limited power of disposition of the estate conferred upon her was for the purpose of securing to her a comfortable and secure support during her life, and except for this purpose and for the purpose of reinvestment she had no power to convert the real estate or to appropriate the personal property.

"An examination of the cases cited by counsel for defendant in support of the proposition that Martha J. Emert became the absolute owner of the rents, income, profits, and increase of the estate of her husband shows that they are cases where an absolute life estate had been given in specific property; but in the present case the property is devised to the wife for a specific purpose, and she is nowhere authorized to receive or use any part of the property except for this purpose. The widow, therefore, holds the property in trust 'to have, manage and use for her support during her life.'

"Mrs. Emert, by accepting the benefits of the estate of her husband, was thereby constituted a trustee to manage said property, collect rents, sell property for reinvestment for the purpose of securing for herself a comfortable support out of the estate, and to preserve that portion of the estate which she did not require for herself for the heirs of John B. Emert."

The court then proceeds to quote the following paragraph from the Emert will:

" 'That there may be no mistake, I here again direct that at my wife's death the realty unsold of my estate or, in case my wife exercises the power of sale herein conferred, the proceeds of such sale or sales or the property purchased thereby in case of reinvestment or the remainder of the principal, if any, in case the principal is diminished, shall belong to my estate, and shall be divided among my lawful heirs.' "

The court then refers to the twofold purpose which the testator had in mind and quoted the further provision in the Emert will as follows:

" 'My intention is to give my wife the use of my entire estate for her support during her life, . . . to belong to my estate at her death, in whatsoever shape it may be found.' "

The court in the Emert Case referred to the fact that under the will the amount necessary for the support of the widow is left entirely to her judgment and discretion, but that after she had been provided a comfortable support, all that remains in her hands at her death under the terms of the will passed to the remaindermen.

There is great similarity between the Emert will and the will we now have under consideration. Certainly a testator could not more clearly express an intention that his estate be given to his wife for

her life time enjoyment, and restricted to be used by her solely for her proper support and maintenance than was the will of M. W. Farrell.

We cannot escape the conclusion that under the terms and provisions of the will now in question it was the clear intention of the testator that the estate was left to his wife to be used by her during her life time solely for her support and maintenance and for no other purpose, and that at her death the estate remaining unconsumed by her support and maintenance would pass to the remaindermen named in the will. This, we think, created in her the relation of a trustee of the estate for the ultimate use and benefit of the named remaindermen. At her death the estate passed to the remaindermen under the terms of the will, and this would include the income from the estate received by her during her life time and not consumed by her during her life time in her support.

In other words, her sole right in the property under the terms of the will was the use and control of the same for her support and maintenance, and if it became necessary for her to sell any part of the property or to exchange it for other property, or to convert it into money to be loaned out, or otherwise reinvested, she could only use such part of the income derived therefrom as was necessary and proper for her support and maintenance, and at her death all that remained would pass to the named remaindermen under the terms of the will.

It is clear from the record, and there is no conflict in the evidence on that question, that all the personal property in the possession of Mrs. Hair at the time of her death was derived from the estate of M. W. Farrell, and that this represented the unexpended and unused portion of said estate by Mrs. Hair at the time of her death, even though the identical property which first went into her possession had been disposed of or reinvested. All of this was embraced within the trust for the use and benefit of the remaindermen, subject alone to the rights of Mrs. Hair to use such part of the same as was necessary for her proper support.

We are therefore of the opinion that the chancellor was in error in holding and decreeing that the property which came into the hands of J. F. Farrell as the administrator of the estate of Mrs. Sara E. Hair constituted her personal estate, and that her surviving husband was entitled to receive the same under the marital law.

The chancellor was further of the opinion, apparently, that because J. F. Farrell, after qualifying as the administrator of the estate of Sara E. Farrell, listed this property as constituting the personal estate of Mrs. Sara E. Hair, that he was thereby estopped from now asserting that this property did not properly belong

to her estate. We do not think that the rule of estoppel in pais, or an equitable estoppel, applies. Certainly, whatever motive may have actuated the administrator in listing this property as a part of the estate of Mrs. Hair would not change the legal ownership thereto. If the property so listed did not belong to the estate of Mrs. Hair, certainly her surviving husband, or his administrator, was not prejudiced in any way by this act.

As we view it, the sole question is resolved into one of law under a proper construction of the will of M. W. Farrell, and as to whether this property was, in fact, the property of Mrs. Hair at the time of her death, or if it was held in trust by her for the benefit of the named remaindermen under the will of M. W. Farrell.

There remains the question presented by the assignments of error directed to the action of the chancellor in excluding the written instrument signed by W. M. Hair after the death of his wife. The record shows that following the signature of Hair to this instrument there was an acknowledgment form on the original paper. After Hair signed the document and after it was witnessed by Plunk, Farrell tore the acknowledgment off of the bottom of the sheet of paper. If it became material to pass upon the question at all, we would be inclined to hold that this did not affect the document. It did not constitute, in our opinion, an altering of the document or in any way changing the document. While the evidence is meager as to what was contained on the end of this paper torn off by Farrell, he testified that it only contained a blank form of acknowledgment which he had on the paper at the time he took it to Hair to obtain his signature. After it was signed by Hair and witnessed by Plunk, the blank form of acknowledgment on the bottom of the sheet was immaterial, and Farrell tore it off. He stated that this was done at Hair's house after Hair had signed the paper and after it had been witnessed by Plunk.

In the conclusion we have already reached with reference to the ownership of the personal property involved, it would also appear that Hair received valuable consideration for signing the document and waiving his claim. It was certainly his legal obligation to pay the burial expenses of his deceased wife, and this item was not properly chargeable to the assets remaining from the estate of M. W. Farrell. The remaindermen also had an interest at least in the automobile and the two cows. Farrell paid the funeral expenses of Mrs. Hair out of money which came into his hands, but this money was a part of the unused portion of the estate of M. W. Farrell, just as other property. However, in the view we have taken of the case, this question becomes immaterial.

It results that the assignments of error directed to the decree of the chancellor in holding and decreeing that the complainant was

entitled to recover the value of the assets remaining in the possession of Mrs. Sara E. Hair at the time of her death, and which the defendant Farrell took into his possession as administrator of her estate, are sustained, and the decree of the chancellor is accordingly reversed and the bill dismissed at the cost of complainant. Complainant and sureties on his prosecution bond will pay the cost of the cause, including the cost of this appeal.

Anderson and Ketchum, JJ., concur.