65 Wn.2d 495 (1965)
398 P.2d 7
In the Matter of the Estate of ROY H. DOUGLAS, Deceased.
LaVERNE S. SIVERSON, as Administrator de bonis non, Appellant,
v.
HELEN JUNE WALLACE, as Executrix, Respondent.[*]
No. 37349.
The Supreme Court of Washington, Department One.
January 7, 1965.
Harry E. Hennessey (of Hennessey, Curran & Bentley), for appellant.
Patrick H. Shelledy (of Woodworth & Shelledy), for respondent.
HUNTER, J.
The main issues presented on this appeal are (1) whether the will of Roy H. Douglas vested the income from his estate in his surviving spouse, Maude Douglas, and (2) whether two bank accounts became her property by right of survivorship.
Roy H. Douglas (hereafter referred to as Roy Douglas) and Maude Douglas were married November 30, 1948, approximately 1 year after the death of his first wife. He executed the will in question September 21, 1961, and died April 22, 1962. The will was admitted to probate and Maude Douglas was appointed executrix on April 30, 1962. She filed an inventory in the estate, in which she designated a float house, boat and motor as community property and the remainder as her husband's separate property. The *497 court, on the petition of Maude Douglas, awarded her a family allowance of $750 per month, effective as of the date of her husband's death.
Maude Douglas died testate November 30, 1962. Her will was admitted to probate and Helen June Wallace was appointed executrix on December 7, 1962. Helen June Wallace was the daughter of Maude Douglas by a prior marriage and was sole beneficiary under her mother's will. The court appointed LaVerne S. Siverson, the son of Roy Douglas' first wife by a prior marriage, administrator de bonis non with the will annexed of Roy Douglas' estate on December 19, 1962. Siverson was beneficiary under the residuary clause in the will.
On January 3, 1963, Helen June Wallace, in behalf of her deceased mother, filed the final account and report in the estate of Roy Douglas. It provided, inter alia, that a $6,313.92 checking account in the Reardan Branch of the Old National Bank of Spokane, and a $10,163.04 savings account in the Northwest Boulevard Branch of Lincoln First Federal Savings & Loan Association of Spokane, were the separate property of Maude Douglas by right of survivorship. Insofar as is here material, the final report and account further provided that the $8,042.62 net income from the farm of Roy Douglas, which accrued during the period in which his wife survived him, passed to Maude Douglas under the terms of his will; that the family allowance to which Maude Douglas was entitled should come out of the corpus of the estate of Roy Douglas; that the sum of $3,000 was a reasonable fee for the services of executrix performed by Maude Douglas, and to be awarded her estate out of the estate of Roy Douglas; and that the float house, boat and motor were community property.
Appellant Siverson filed an answer and objections to the final account and report. The matter went to trial. On September 20, 1963, the trial court made findings of fact and conclusions of law and entered judgment approving and confirming the final account, subject to certain exceptions, including provisions that a 1955 Chrysler automobile and a $57.98 automobile-insurance refund were community property. *498 The trial court further directed that the Roy Douglas estate pay the attorneys for respondent, Helen June Wallace, $1,250 in fees. Siverson appeals.
Paragraphs III and IV of Roy Douglas' will provide the following:

"III.
"I give and bequeath unto my wife Maude Douglas all the rest, residue and remainder of my estate, both real and personal, together with the income therefrom, for and during her lifetime, and at her death as follows:
"To Helen Wallace, my step-daughter, the sum of $500.00,
"To Barbara Bromley, daughter of Helen Wallace, the sum of $500.00,
"To my step-son LaVerne S. Siverson all the rest, residue and remainder of my estate, both real and personal, including my farm land and home in Spokane. (Italics ours.)

"IV.
"It is my will and intention that my wife Maude Douglas be comfortably provided for during her lifetime and I hereby provide that she may use the income from my land and investments for that purpose, she may use cash on hand and bonds and other personal property and if necessary for that purpose she may sell the real estate under order of the Court upon proper showing to the Court that such sale is necessary, and I further provide that if my wife Maude shall find that taking care of my home where she now lives is too burdensome or too much of a task for her, that she may sell the same without court order, and use the funds to provide an apartment or other place to live." (Italics ours.)
The appellant contends the trial court erred in finding that the income from the estate of Roy Douglas vested in Maude Douglas; that by reading paragraphs III and IV of the will together the income was available to her only to the extent of her needs, and that since there was no showing her needs were in excess of the $750 per month awarded to her as family allowance, the income remained an asset of the estate.
[1] The rule is well established that the holder of a life estate created by will is entitled to all income derived from the estate during his tenancy, and any such income *499 which remains unexpended at his death constitutes a part of his estate and does not pass to the remaindermen under the will. Hair v. Farrell, 21 Tenn. App. 12, 103 S.W. (2d) 918 (1936); Edwards v. Williamson, 202 Ala. 483, 80 So. 867 (1919); In re Cutler, 23 Misc. 508, 52 N.Y.S. 842 (1898); 31 C.J.S., Estates § 41 (a). But this rule does not apply where the enjoyment of a life estate is specifically limited to the necessary support and maintenance. Hair v. Farrell, supra, at p. 21. Paragraph III of Roy Douglas' will unequivocally created a life estate in Maude Douglas. Noble v. Noble, 205 Okla. 91, 235 P. (2d) 670, 26 A.L.R. 1200 (1951); In re McCready's Will, 259 N.Y.S. 512, 236 App. Div. 390 (1932), affirmed in 263 N.Y. 602, 189 N.E. 718 (1933); Medlin v. Medlin, 203 S.W. (2d) 635, 639 (Tex. Civ. App. 1947).
The question for our determination is whether paragraph IV of the will limited the life estate of Maude Douglas so that the $8,042.62 net income which was derived during her tenancy, and which was unexpended by her, passed to the remainderman under Roy Douglas' will, as appellant contends, or whether such income constituted a part of Maude Douglas' estate, as the trial court held.
[2] In construing the provisions of the will we are bound by the oft-repeated rules that the testator's intent is paramount and must be gathered from the four corners of the will when read as a whole. Further, where, as here, an estate is given in one part of a will in clear and decisive terms (paragraph III) it will not be taken away or cut down by doubtful language of a subsequent clause, but only by positive provision in words as clear and decisive as those which created the estate. In re McCready's Will, supra. See Medlin v. Medlin, supra, at p. 639; In re Thomas' Estate, 17 Wn. (2d) 674, 136 P. (2d) 1017, 147 A.L.R. 598 (1943). As we said in In re Searl's Estate, 29 Wn. (2d) 230, 186 P. (2d) 913, 173 A.L.R. 1247 (1947), the intention which controls is that which is positive and direct, not that which is merely negative or inferential.
In the instant case, it is patent that the statement in paragraph IV, that Maude Douglas may use the income so as to be "comfortably provided for" does not equate to the *500 positive language the cases require to cut down a life estate. In re McCready's Will, supra; Medlin v. Medlin, supra; Noble v. Noble, supra; Annot., 26 A.L.R. (2d) 1207. At the very most it creates an inference that the testator intended the estate to be so limited. An inference is not enough. The right of Maude Douglas to the income under paragraph III of the will was not limited by unequivocal language in paragraph IV.
Since Maude Douglas' right to the income was unlimited, the extent to which the family allowance met her "needs" is not material. The trial court correctly held that under the will of Roy Douglas, Maude Douglas was entitled to all the net income derived from his estate during her lifetime, which passed to her estate.
The appellant contends the family-allowance award should have been paid out of the income of the Roy Douglas estate instead of the corpus. Under RCW 11.52.040 the court may, without qualification, make the family-allowance award out of the estate. The award out of the corpus was therefore proper.
The appellant next contends the trial court erred in holding the bank accounts survived to Maude Douglas. The issue here is whether the two accounts are joint accounts in the nature of joint tenancies, with the right of survivorship annexed.
We will first consider the checking account in the Reardan Branch of the Old National Bank of Spokane. Prior to June 15, 1953, the account had been in Roy Douglas' name alone and was his separate property. On that date, Roy and Maude Douglas each signed a signature card which provided:
 "Roy Douglas or Mrs. Joint a/c XXX-XXX-X
 __________________________________________________________
 "Joint Checking Account 2 Persons only  Survivorship
"...
"The undersigned, joint depositors, hereby agree, each with the other, and with The Old National Bank of Spokane, that all sums now on deposit, or hereafter deposited by either or both of said joint depositors in this account, with all accumulations thereon, are and shall be subject to the check or receipt of either of them, or the survivor of them, and payment to or on the check of either, or the *501 survivor, shall be valid and discharge said Bank from liability.
"...
 Signature: Roy Douglas
 Signature: Mrs. Roy Douglas"
[3] The creation of an account in the nature of a joint tenancy, with the right of survivorship annexed, depends upon the intent of the parties. Kaufman v. Kaufman, 60 Wn. (2d) 1, 7, 371 P. (2d) 535 (1962). Since this deposit was in a national bank under the purview of RCW 30.20.015, our preliminary inquiry is whether the provision therein that such a deposit is conclusive evidence of the depositors' intention to vest title in the survivor, applies.
[4] The statute provides that the making of a commercial deposit, in the names of a depositor and one or more other persons, in form to be paid to any of them or the survivor of them, shall, in the absence of fraud or undue influence, be conclusive evidence of the depositors' intention to vest title in the survivor. Though nothing in the statutory language indicates that a change of signature card equates to the making of a deposit, the execution of the new card in this manner suffices as a deposit in statutory form. In re Green's Estate, 46 Wn. (2d) 637, 640, 283 P. (2d) 989 (1955).
[5] There was no evidence of fraud or undue influence in the instant case. Nor was there any community property conflict. See In re Webb's Estate, 49 Wn. (2d) 6, 297 P. (2d) 948 (1956); 37 Wash. L. Rev. 98. Therefore, since the deposit was in the form the statute requires, it constitutes conclusive "evidence" of the depositors' intent to vest title in the survivor, Maude Douglas; i.e., the presumption of right of survivorship thereby became conclusive. In re Green's Estate, supra. Accordingly, we do not consider appellant's evidence on the question of intent. The trial court correctly held that Maude Douglas was entitled to the $6,313.92 checking account by right of survivorship.
[6] Next, we consider the savings account in Lincoln First Federal Savings & Loan Association of Spokane. It is respondent's contention that the Lincoln account was conclusively *502 established as a joint account in the nature of a joint tenancy with right of survivorship annexed. Respondent bases this contention upon the fact that on January 17, 1949, Roy and Maude Douglas executed a signature card in statutory form with the Reardan Branch of the Old National Bank, which card applied to the same funds that eventually were transferred to Lincoln First Federal. Respondent argued that since RCW 30.20.015 applied to the Reardan savings account, its conclusive-evidence provision applied. RCW 30.20.015 did not become effective until June 7, 1951. Laws of 1951, chapter 18, § 1, p. 36. This "deposit" was made in 1949. RCW 30.20.015 was not retroactive; it had no application to accounts such as this, opened prior to its effective date. Accordingly, its conclusive-evidence provision was not applicable in this instance. In re Webb's Estate, supra.
On February 9, 1959, Roy and Maude Douglas, having 3 days earlier closed out the Reardan savings account (which we do not consider further), deposited the funds in Lincoln First Federal. The signature card they signed provided:
 "Joint Savings Account Account No. 5696
 "Roy H. Douglas and Maude B.
"We hereby apply for a joint savings account in the Lincoln First Federal Savings and Loan Association ...
"It is understood and agreed that the said joint savings account and all moneys paid or that may hereafter be paid thereon are paid by the undersigned and that such joint account is held by said association for our joint account and that withdrawals from said joint account may be made subject to the by-laws of said association by either before or after death of either ...
"...
 "Signature: Roy H. Douglas
 "Signature: Maude B. Douglas . . ."
(Italics ours.)
[7] The appellant contends this language is insufficient to establish the intent necessary to create a right of survivorship when considered with the other evidence in the case. This being a deposit in a savings and loan association, RCW 33.20.030 applies. The statute, unlike RCW 30.20.015, does not include a provision making a deposit in statutory *503 form conclusive evidence of intent to vest title in the survivor. Instead, a rebuttable presumption of such intent arises. In re Green's Estate, supra. Although the language of the signature card does not expressly state there should be a right of survivorship, by considering the card in its entirety, we are satisfied it comes within the purview of the statute, RCW 33.20.030, supra.
The strongest evidence in support of appellant's contention is that Maude Douglas, the surviving co-depositor, inventoried the bank accounts as the separate property of Roy Douglas, and listed them as his separate property in both the federal estate tax and state inheritance tax forms.
Respondent contends that Maude Douglas was misguided by her attorney, who is no longer in this case, and was unaware of the true status of the accounts. The trial court, in its memorandum opinion, stated: "Why she included those two accounts in Mr. Douglas's estate none of us can be sure, unless for inheritance tax purposes..."
We agree with the trial court that whatever reason Maude Douglas could have had for the listing of the bank accounts as Roy Douglas' separate property is speculative. Moreover, the record shows that after Roy Douglas' death Maude Douglas treated the Lincoln First Federal account as her own. She withdrew the entire amount on deposit and redeposited it in her own name and that of her daughter, Helen June Wallace. Further, Roy and Maude Douglas had been happily married 10 years when the joint account card was executed. We are satisfied that the trial court correctly found the evidence insufficient to rebut the presumption that the parties intended the creation of a joint account in the nature of a joint tenancy with right of survivorship annexed.
The appellant contends the trial court erred in failing to find the Chrysler automobile was Roy Douglas' separate property. His contention is grounded on the premise that the car was purchased in 1955 with Roy Douglas' separate funds from the Reardan checking account.
We have already determined that the funds in the Reardan checking account at that time were the joint property of *504 Roy and Maude Douglas. The contention that the Chrysler automobile was Roy Douglas' separate property is therefore without merit. Kaufman v. Kaufman, supra.
[8] Appellant contends that the trial court erred in failing to find that a $57.98 automobile-insurance refund was Roy Douglas' separate property. The policy was purchased during marriage. The evidence in the record failed to rebut the presumption that the refund was community property. In re Dougherty's Estate, 27 Wn. (2d) 11, 176 P. (2d) 335 (1947).
[9] Appellant contends the trial court erred in awarding a $3,000 executrix fee to the estate of Maude Douglas for services she rendered during the 7 months she served in that capacity prior to her death. Appellant does not attack the amount of the fee, but, rather, contends that no fee should have been awarded, since, in his opinion, Maude Douglas would not have claimed the fee for "tax reasons," had she lived. This argument indulges in speculation. RCW 11.48.210 requires that the trial court allow an executrix such compensation as to the court shall seem just and reasonable. The granting of such compensation is within the discretion of the trial court and we will not disturb its findings unless there are facts and circumstances clearly showing an abuse of that discretion. In re Merlino's Estate, 48 Wn. (2d) 494, 294 P. (2d) 941 (1956). No such abuse is shown here.
[10] Finally, appellant contends that the trial court erred in directing that the attorneys for Helen June Wallace should be paid a fee of $1,250 out of the estate of Roy Douglas. Again, appellant does not attack the amount of compensation, but argues the attorneys were entitled to no award out of the estate. We agree. Services rendered by these attorneys did not benefit the estate of Roy Douglas; rather, they benefitted the estate of Maude Douglas, and ultimately, of course, the sole beneficiary of that estate, Helen June Wallace. The trial court manifestly abused its discretion in making such award out of the estate of Roy Douglas. In re Vaughn's Estate, 149 Wash. 291, 270 Pac. 1030 (1928).
*505 In oral argument, appellant expressly waived his appeal in regard to the float house, boat and motor.
The judgment of the trial court is affirmed, except insofar as it awarded fees to respondent's attorneys out of the estate of Roy Douglas, which portion of the judgment is reversed and the cause remanded for disposition in accord with the views expressed above.
The parties will bear their own costs on this appeal.
OTT, C.J., HILL and HALE, JJ., and SHORETT, J. Pro Tem., concur.
NOTES
[*] Reported in 398 P. (2d) 7.