[No. 1725–3.   Division Three.   May 3, 1977.]

RAYMOND G. DOTY, *Respondent,* v. ROBERT M.
ANDERSON, ET AL, *Appellants.*

*Hamblen, Gilbert & Brooke, P.S., William Fremming Nielsen,* and *Jan G. Otterstrom,* for appellants.

*Erickson & Erickson, Harvey Erickson,* and *Bruce H. Erickson,* for respondent.

MUNSON, C.J.—The Andersons appeal the trial court's judgment holding that Mrs. Anderson exerted undue influence upon Mrs. Doty, which resulted in Mrs. Doty establishing her savings and checking accounts in joint tenancy with Mrs. Anderson and making a monetary gift of $2,000 to Mrs. Anderson.

Mrs. Doty was an elderly woman whose mental and physical health deteriorated the last few months prior to her death March 20, 1975. For several years prior to Mrs. Doty's death, Mrs. Wallace, a neighbor, had assisted her in cooking, running errands, and paying bills. In October and November of 1974, Mrs. Wallace requested that Mrs. Anderson accompany her to the bank to cash Mrs. Doty's

checks. After November 1974, apparently under Mrs. Doty's direction, Mrs. Wallace no longer assisted Mrs. Doty in the management of her money; rather Mrs. Anderson solely assisted Mrs. Doty in this regard. January 16, 1975, Mrs. Doty and Mrs. Anderson executed new signature cards, thereby establishing Mrs. Doty's savings and checking accounts in both women's names in joint tenancy with a right of survivorship. Aside from the checks used in paying bills, during January and February of 1975, Mrs. Doty signed three checks for a total of $3,000. The January 3 check was in the amount of $500. Mrs. Anderson testified that she cashed this check, kept the money for Mrs. Doty, and that Mrs. Doty used all of it. A second check for $500 was dated January 17. Mrs. Anderson testified that she also cashed this check, kept the money to pay bills for Mrs. Doty, and had used approximately $30 for bills. Mrs. Anderson acknowledges the remaining $470 belongs to the Doty estate. The third check in the amount of $2,000 was written to Mrs. Anderson's personal savings account, and Mrs. Anderson contends that this was a gift from Mrs. Doty to defray medical expenses. After Mrs. Doty's death, Mrs. Anderson transferred the money which had previously been in the joint checking and savings accounts to her own personal savings account.

Raymond Doty, Mrs. Doty's son, brought this action to recover the money which had been in the joint accounts and that portion of the $3,000 in checks wrongfully kept by Mrs. Anderson. The trial court entered judgment for Raymond Doty, and the Andersons appeal.

█ █ RCW 30.20.015[1] provides that any deposit made in a bank account held in joint tenancy with a right of survivorship is conclusive evidence that it was the intention of the depositors that any money in said bank accounts vest

---

[1] "The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such bank or the surviving depositor is a party, of the intention of the depositors to vest title to such deposit and the additions thereto in the survivor or survivors."

with the survivor or survivors, absent fraud or undue influence. When there is an existing bank account and a new signature card is executed with an additional name, this action is deemed to have the same effect as a deposit under RCW 30.20.015. *In re Estate of Douglas,* 65 Wn.2d 495, 398 P.2d 7 (1965); *In re Estate of Green,* 46 Wn.2d 637, 283 P.2d 989 (1955). Therefore, when Mrs. Doty and Mrs. Anderson executed the new signature cards January 16, 1975, adding Mrs. Anderson's name, this action provided a conclusive presumption, absent fraud or undue influence, that both women intended that the contents of those bank accounts be held by them as joint tenants with a right of survivorship. The fact that Mrs. Doty had a will granting all of her property to her son, Raymond, is immaterial; Mrs. Doty's intention as to the ownership of these bank accounts is controlled by statute, rather than common law. Annot., 43 A.L.R.3d 971 (1972); *see Anderson v. Anderson,* 80 Wn.2d 496, 495 P.2d 1037 (1972). Consequently, only a showing that Mrs. Anderson exerted fraud or undue influence upon Mrs. Doty would overcome the statutory presumption that Mrs. Doty intended that Mrs. Anderson take the money in the bank accounts through a right of survivorship. *In re Estate of Esala,* 16 Wn. App. 764, 559 P.2d 592 (1977).

█ Proof of the undue influence must be by clear, cogent and convincing evidence. *In re Estate of Soderstran,* 35 Wn.2d 448, 213 P.2d 949 (1950); *In re Estate of Esala, supra; In re Estate of Travelli,* 3 Wn. App. 1015, 478 P.2d 767 (1970). The court in *In re Estate of Esala, supra* at 766, quoted *Dean v. Jordan,* 194 Wash. 661, 671–72, 79 P.2d 331 (1938), and set out the following important factors for determining whether there had been undue influence, thus invalidating a will:

(1) that the beneficiary occupied a fiduciary or confidential relation to the testator; (2) that the beneficiary actively participated in the preparation or procurement of the will; and (3) that the beneficiary received an unusually or unnaturally large part of the estate.

> Added to these may be other considerations, such as [4] the age or condition of health and mental vigor of the testator, [5] the nature or degree of relationship between the testator and the beneficiary, [6] the opportunity for exerting an undue influence, and [7] the naturalness or unnaturalness of the will. The weight of any of such facts will, of course, vary according to the circumstances of the particular case.[2]

These factors are equally applicable in determining whether there was a sufficient showing of undue influence to overcome the statutory presumption of RCW 30.20.015. We shall discuss each factor, considering the evidence most favorable to the respondent:

1. The existence of a confidential or fiduciary relationship between Mrs. Doty and Mrs. Anderson.

Mrs. Anderson's own testimony established that Mrs. Doty confided in her and that they had a "very close relationship, confidential relationship." Furthermore, the existence of such a relationship is supported by the fact that Mrs. Doty allowed Mrs. Anderson to assist her in managing her financial affairs.

2. Mrs. Anderson's active participation in the preparation or procurement in the change of ownership of the savings and checking accounts.

Mrs. Anderson testified that Mrs. Doty had first suggested she give all her money to Mrs. Anderson so that Mrs. Anderson could pay all of Mrs. Doty's bills. Mrs. Anderson suggested a joint checking account, rather than putting the money solely in her own name. Mrs. Anderson assisted Mrs. Doty in transferring her savings account to the south hill branch of the bank where Mrs. Anderson was employed. Mrs. Anderson's signature on the cards indicates an active participation in the change of the ownership of the accounts.

3. The money as an unusually large amount.

---

[2]See 25 Am. Jur. 2d *Duress and Undue Influence* §§ 35–38 (1966), for a discussion of these and additional factors.

On March 28, 1975, when Mrs. Anderson withdrew the money from the two accounts, the joint savings account contained $18,953.15 and the joint checking account contained $4,070.41. Mrs. Doty had a son who lived with her and who was her sole heir. Mrs. Anderson had known Mrs. Doty only since the summer of 1972, had handled her financial affairs only since the fall of 1974; whereas, Mrs. Wallace had known Mrs. Doty for 25 years, and had helped her with her household chores and financial affairs for years. In addition, December 25, 1974, Mrs. Doty had given Mrs. Wallace a check for only $500. Although these accounts are only two of Mrs. Doty's several bank accounts, $23,000 is an unusually large amount of money for Mrs. Doty to have intended to give to Mrs. Anderson.

Although the above three are the primary factors of consideration, the following factors should also be considered:

4. Mrs. Doty's age and/or physical and mental health.

Mrs. Doty was 80 years old when she died. There is extensive testimony from numerous witnesses that since 1970 her mental and physical condition had seriously deteriorated, particularly during the few months prior to her death. She needed medical attention, but refused to see a physician. She also needed new glasses because she could not see to read, but she failed to seek assistance. She occasionally suffered from hallucinations and could not always distinguish fact from fantasy. She oftentimes thought nonexistent people were in her house. Consequently, her age and physical and mental condition were such that she was very susceptible to undue influence.

5. The nature or degree of the relationship between Mrs. Doty and Mrs. Anderson.

As stated above, Mrs. Anderson was in a confidential relationship with Mrs. Doty, particularly concerning Mrs. Doty's financial affairs.

6. Mrs. Anderson's opportunity to exert undue influence upon Mrs. Doty.

Although Mrs. Anderson had assisted Mrs. Wallace in conducting Mrs. Doty's financial affairs in October and

November of 1974, after November of 1974, Mrs. Anderson alone assisted Mrs. Doty in managing her financial affairs. Mrs. Doty trusted and relied upon Mrs. Anderson as a bank teller and as a friend in assisting her with her financial matters.

7. The naturalness or unnaturalness of Mrs. Doty transforming both her bank accounts into joint tenancies with Mrs. Anderson.

The mere act of adding Mrs. Anderson to Mrs. Doty's checking account may not have been that unnatural, particularly since Mrs. Doty relied upon Mrs. Anderson to help her in paying her bills. However, the combination of the other factors render the addition of Mrs. Anderson to the bank accounts as unnatural. It was totally unnecessary for Mrs. Anderson to be a joint tenant on Mrs. Doty's savings account. Although Mrs. Anderson testified that Mrs. Doty wanted Mrs. Anderson to have all her money, it would appear that the logical reason for adding Mrs. Anderson to Mrs. Doty's checking account would be to help facilitate Mrs. Anderson in assisting Mrs. Doty in payment of her bills. With Mrs. Anderson as a joint tenant to the checking account, Mrs. Anderson could pay Mrs. Doty's bills without necessitating Mrs. Doty's signature on each check. There is no apparent purpose served by having Mrs. Anderson as a joint tenant to the savings account, particularly since Mrs. Doty had not previously asked either her son[3] or Mrs. Wallace to join her on her bank accounts. It is even more unnatural in light of the $500 check to Mrs. Wallace December 25, 1974. It is unreasonable that Mrs. Doty would attempt to give Mrs. Wallace, a long–time friend, $500 and within less than a month, create joint tenancy bank accounts with Mrs. Anderson, whereby Mrs. Anderson would receive $23,000.

Based on the above, there is sufficient evidence, by the clear, cogent and convincing standard, to overcome the

---

[3]There is substantial evidence that this son, who lived with his mother, may have been more of a burden than an asset to his mother.

statutory presumption that Mrs. Doty intended to transform her bank accounts into joint tenancies with Mrs. Anderson.

■ Having so found, the $2,000 check from Mrs. Doty to Mrs. Anderson is controlled by the common law of gifts, rather than RCW 30.20.015. The party asserting the existence of a gift, *i.e.*, Mrs. Anderson, has the burden of proving the transfer actually was a gift "by evidence which is 'clear, convincing, strong, and satisfactory.'" *Tucker v. Brown,* 199 Wash. 320, 325, 92 P.2d 221 (1939); *Whalen v. Lanier,* 29 Wn.2d 299, 312, 186 P.2d 919 (1947). Furthermore, having found a confidential relationship between these women, Mrs. Anderson was required to prove by clear, cogent and convincing evidence that she did not exert undue influence upon Mrs. Doty and that the $2,000 check was actually a gift. *McCutcheon v. Brownfield,* 2 Wn. App. 348, 467 P.2d 868 (1970).

The same factors apply in this determination that have been discussed previously. Although Mrs. Anderson testified:

"Well, Opal had told me repeatedly that she wanted me to have her money and that anything I wanted I could have. This was one morning when I called her fairly early in the morning and talked to her. She asked me how I was feeling, and I told her that I wasn't really feeling up to par yet, that I had been to see my surgeon and he had said it would be a little longer than I had anticipated before I went back to work, and she always called me Honey, and she said, Honey, if there is anything that you need or anything that we can do for you, you just take the money, you know that it ain't doing nobody no good where it is, were her words. So I told her that if it was all right with her that I would use—I told her I had a check of hers that she had signed and that I would make it out for $2,000.00 and that it would really relieve my mind a lot to get some bills and expenses paid."

Our review of the evidence satisfies us that there was substantial evidence to support the court's finding of fact that Mrs. Anderson exerted undue influence upon Mrs. Doty in order to obtain the $2,000 check.

The judgment is affirmed.

GREEN and MCINTURFF, JJ., concur.