[No. 36339-9-II.   Division Two.   April 8, 2008.]

*In the Matter of the Estates of* ALFRED S. PALMER ET AL.

DONALD PALMER, *Respondent*, v. DAWN PALMER GOLDEN, *Appellant*.

---

*John A. Rorem*, for appellant.

*James V. Handmacher* (of *Morton McGoldrick, PS*), for respondent.

¶1 ARMSTRONG, J. — This case involves a dispute between siblings Dawn Golden and Donald Palmer over funds Golden transferred using a durable power of attorney from an account in her mother's name to a joint account with right of survivorship for her mother and herself. But for the transfers, the funds would have gone to Donald as personal representative of the estate of their parents, Alfred and Sarah Palmer.[1] Golden now appeals from a judgment in favor of the estate for the amounts she transferred. She argues that the trial court erred by (1) failing to dismiss the petition under the time bar in RCW 11.11.070, (2) declining

---

[1] Because several relevant individuals bear the same last name, we refer to Donald Palmer as "Palmer," and Alfred and Sarah Palmer by their first names.

to admit certain evidence, (3) applying the wrong burden of proof, and (4) entering various findings of fact. Finding no error, we affirm.

## FACTS

¶2 In 1997, Alfred and Sarah executed a revocable living trust agreement establishing the Alfred S. Palmer and Sarah L. Palmer Trust (Trust). Alfred and Sarah were the initial cotrustees of the Trust, with Palmer designated as successor trustee on the deaths of both Alfred and Sarah. The beneficiaries of the Trust were various religious charities. Alfred and Sarah also each executed wills appointing Palmer as personal representative and bequeathing all of their property to the Trust.

¶3 In 1999, Alfred suffered a stroke that left him totally incapacitated and unable to communicate verbally or in writing. He died in 2001. Also in 1999, a neurologist diagnosed Sarah with moderate to severe Alzheimer's disease, finding that she had a progressive and "fairly profound" memory loss. Clerk's Papers (CP) at 341. That year, both Alfred and Sarah executed durable powers of attorney appointing Golden as their attorney-in-fact. From the time of Alfred's stroke until Sarah's death in 2003, Golden managed all of their financial affairs using her powers of attorney.

¶4 In 2006, Palmer filed a petition under chapter 11.96A RCW for the court to determine Golden's liability to the estate, alleging that she (1) transferred money and securities from her parents' accounts to herself, (2) made numerous gifts and loans of her parents' funds to family and friends, (3) removed or allowed others to remove personal property from her parents' family home and cabin, and (4) failed to account for certain estate assets. At trial, the parties established the following facts.

A. Edward Jones Account

¶5 While managing her parents' financial affairs under the power of attorney, Golden closed several of their accounts and transferred the funds into a new stock brokerage account where she was named a joint tenant with right

of survivorship. The account, number 870-08459-1-3 at Edward Jones, was opened in the names of Sarah Palmer and Dawn L. Golden in December 2000. After Sarah died, Golden transferred the $407,270.42 in the Sarah/Golden joint account to her own account at Edward Jones.

¶6 RCW 11.94.050(1) prohibits an attorney-in-fact from designating anyone as a joint tenant with right of survivorship with respect to any of the principal's property without specific authorization in the power of attorney; the trial court held that any such action was ineffective and therefore a conversion of the principal's property. Thus, the major issue at trial was whether Golden used her power of attorney to create the Sarah/Golden joint account or whether Sarah opened it herself. Golden had used her power of attorney to make the initial deposit into the account on the day it was opened, consisting of funds from an account held by Alfred and Sarah at Key Bank. Later, she also used her power of attorney to empty another account, which she had created in Alfred and Sarah's names, into the Sarah/Golden joint account.

¶7 Shortly before trial, Golden attempted to submit additional evidence that she had not included on the exhibit and witness list exchanged with counsel two weeks earlier. In fact, Golden had obtained the evidence by a subpoena that she issued after the discovery cutoff and without notice to Palmer. Pierce County Local Rule (PCLR) 3(b)(2) prohibits use of such evidence at trial "unless the court orders otherwise for good cause and subject to such conditions as justice requires." Golden claimed that the court should admit the documents because they were dispositive as to who opened the Edward Jones account, and she claimed that she had used due diligence to obtain them before the discovery deadline. The documents, Edward Jones's "new account form approval" printouts for the Sarah/Golden joint account, contained notations that the account was not being operated by power of attorney during the first month it was open. CP at 325-26. The court denied Golden's motion to admit the documents because of the lack of notice to Palmer.

¶8 After trial, the trial court found that Golden, not Sarah, had opened the account, relying on several factors. First, Golden made the initial deposit, on the day the account was opened, using funds that she had withdrawn using her power of attorney. Second, Brian Duffy, an investment advisor for Edward Jones, testified in his deposition that Golden opened the account using her power of attorney. Third, Golden admitted that she handled all of Alfred and Sarah's financial affairs under the powers of attorney after Alfred's stroke because they were not capable of doing so themselves.[2] The court further found that there was no credible evidence that Sarah intended to give Golden all of her remaining funds upon her death. To the extent that Golden's and Duffy's trial testimony conflicted with these findings, the trial court found it not credible. Thus, Golden's transfer of those funds to herself after Sarah's death was a conversion of assets belonging to the estate and Trust.

## B. Loans

¶9 Golden made loans to several of her friends and relatives from her parents' funds, in most cases without a promissory note, collateral, or interest. Although Golden repaid some of the loans to the estate, loans totaling $31,200 remain unpaid. The trial court held that Golden breached her fiduciary duties as attorney-in-fact by making these unsubstantiated loans to her family and friends.

## C. Personal Property

¶10 Golden also removed or allowed others to remove personal property and fixtures from her parents' home and cabin in Warm Beach. The value of the items removed from these properties was $10,000 and $1,500, respectively, and the estate never received reimbursement for those items. The trial court ruled that Golden wrongfully interfered

---

[2] The trial court published both Duffy's and Golden's depositions and admitted designated portions of them as evidence without objection from Golden. We are not asked to determine whether the depositions were admissible as substantive evidence.

with and converted the estate's possession and control of the personal property when she allowed others to remove it.

## D. Gifts

¶11 Golden also made numerous gifts from her parents' funds. The powers of attorney authorized Golden to make gifts, if she did so in good faith. But her authorization extended only to gifts to Alfred and Sarah's lawful descendants, after considering the pattern of giving Alfred and Sarah had established. The trial court found that although a few of Golden's gifts were in good faith, several were not, and were therefore not authorized by the powers of attorney. One of the gifts was further unauthorized because the donee, Dustin Carling, was not related to Alfred and Sarah.

## E. Accounting of Missing Assets

¶12 Finally, Golden was unable to account for assets belonging to her parents that she had liquidated or withdrawn between 1999 and 2002. The trial court held that Golden breached her fiduciary duty as attorney-in-fact by failing to account to the estate for these assets.

¶13 On the last day of trial, Golden moved to dismiss under RCW 11.11.070(3), which imposes a one-year time bar on actions by testamentary beneficiaries claiming a nonprobate asset after the owner's death. The trial court denied the motion, finding it untimely and holding that the statute did not apply because Palmer was not a "testamentary beneficiary" as defined in RCW 11.11.010(10).

¶14 The trial court entered judgment to Palmer for (1) $407,270.42 for conversion of the Edward Jones account plus $190,380.00 in prejudgment interest, (2) $31,200.00 for the outstanding loans of estate property, (3) $12,118.35 for unauthorized gifts, (4) $11,500.00 for conversion of personal property, (5) $67,639.52 for the assets missing from the estate plus $62,237.23 in prejudgment interest, (6) $2,685.93 in unpaid interest on the amounts ordered by the commissioner, and (7) $37,547.19 for Palmer's attorney fees and costs under RCW 11.96A.150. The court also imposed a

constructive trust on the funds in Golden's personal account at Edward Jones to pay the $597,650.42 judgment on the first claim.

## ANALYSIS

### I. TIME BARS

#### A. RCW 11.11.070(3)

¶15 Golden alleges that Palmer's petition for ownership of the Edward Jones account was barred by RCW 11.11.070(3), which imposes a one-year period within which a testamentary beneficiary may claim a nonprobate asset after the owner's death.[3] Palmer responds that Golden waived this affirmative defense by failing to plead it in her answer.

¶16 Civil Rule (CR) 8(c) requires responsive pleadings to set forth "any . . . matter constituting an avoidance or affirmative defense," including statutes of limitation. Affirmative defenses are thus waived unless they are (1) affirmatively pleaded, (2) asserted in a motion under CR 12(b), or (3) tried by the parties' express or implied consent. *Harting v. Barton*, 101 Wn. App. 954, 962, 6 P.3d 91 (2000). None of these conditions apply to Golden's RCW 11.11.070(3) defense.

¶17 Citing CR 12(h)(3), Golden argues that the time bar in RCW 11.11.070(3) is not an affirmative defense but, rather, is a statute of repose that deprives the trial court of subject matter jurisdiction, which a party does not waive. But even if we accept that RCW 11.11.070(3) is a statute of repose, it does not affect the court's jurisdiction; rather, statutes of repose, like statutes of limitation, attach to and bar only the claim itself. *Rice v. United States*, 122 U.S. 611, 621-22, 7 S. Ct. 1377, 30 L. Ed. 793 (1887). We hold that

---

[3] RCW 11.11.070(3)(b) provides that "[a] testamentary beneficiary claiming a nonprobate asset who has not filed such a petition within . . . one year from the date of the owner's death, shall be forever barred from making such a claim or commencing such an action."

Golden waived the time bar defense in RCW 11.11.070(3) by failing to plead it in her answer or in a CR 12 motion.[4]

## B. RCW 11.96A.070

¶18 Golden also contends that all of Palmer's claims are barred by the three-year statute of limitations in RCW 11.96A.070,[5] which runs, according to Golden, from the date that Palmer should have discovered Golden's activities. But on its face, that statute does not apply; it creates statutes of limitation for actions *against* the trustee of an express trust, a personal representative, or a court-appointed special representative. RCW 11.96A.070. Golden's liability arises because of her use of the powers of attorney, not as trustee, personal representative, or special representative. This statute does not bar Palmer's petition.

## II. ADMISSION OF ADDITIONAL EVIDENCE

¶19 Golden assigns error to the trial court's pretrial ruling denying her motion to add the Edward Jones printouts to the evidence at trial. She argues that by so ruling, the court held that "process is more important than justice," contrary to *Eagle Group, Inc. v. Pullen*, 114 Wn. App. 409, 417-18, 58 P.3d 292 (2002). Br. of Appellant at 24.

¶20 A trial court has broad discretion in ruling on evidentiary matters, and we will overturn such rulings only for a manifest abuse of discretion. *Cox v. Spangler*, 141 Wn.2d 431, 439, 5 P.3d 1265 (2000). We also review a trial court's sanctions for a party's noncompliance with discovery orders for an abuse of discretion. *Rivers v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 684, 41 P.3d 1175 (2002). A trial court abuses its discretion if it

---

[4] Golden would likely lose on the merits in any event because Palmer is not a "testamentary beneficiary." RCW 11.11.010(10) defines a "testamentary beneficiary" as "a person named under the owner's will to receive a nonprobate asset." Alfred and Sarah did not name Palmer as the beneficiary of specific nonprobate assets in their wills.

[5] Golden cites RCW 96A.070 in her brief, but RCW 11.96A.070 is the provision that Golden argued to the trial court.

exercises its discretion on untenable grounds or for untenable reasons, or if the discretionary act is manifestly unreasonable. *Qwest Corp. v. City of Bellevue*, 161 Wn.2d 353, 369, 166 P.3d 667 (2007) (quoting *Lindgren v. Lindgren*, 58 Wn. App. 588, 595, 794 P.2d 526 (1990)).

¶21 The case relied on by Golden, *Eagle Group, Inc.*, held that "[s]urprise is not a basis for excluding relevant evidence under ER 403 unless the opposing party will suffer unfair prejudice." *Eagle Group, Inc.*, 114 Wn. App. at 417. The trial court's ruling here was not under ER 403, but rather PCLR 3(b)(2), which *requires* exclusion of evidence not listed in a party's exhibit list "unless the court orders otherwise for good cause." Golden had the burden of establishing good cause, and she failed to do so, given that she produced the evidence two weeks before trial without notice to Palmer. *Cf. Eagle Group, Inc.*, 114 Wn. App. at 417-18 (no unfair prejudice where evidence produced seven months before trial, albeit after discovery deadline).

¶22 Golden appears to also argue that Palmer's counsel violated RPC 3.3 and RPC 8.4 by opposing the introduction of the Edward Jones records into evidence. An attorney does not commit misconduct by opposing the introduction of evidence that violates applicable procedural rules, no matter how strong the evidence. And regardless, Golden does not state what the remedy would be for such a violation. *See Hizey v. Carpenter*, 119 Wn.2d 251, 259, 830 P.2d 646 (1992) (breach of an ethics rule provides only a public, e.g., disciplinary, remedy and not a private remedy). The trial court considered the strength of the evidence as one factor in determining whether to admit it; we defer to its conclusion.

¶23 In sum, the trial court's decision was not manifestly unreasonable or untenable; the trial court did not err in denying Golden's motion to add evidence.[6]

---

[6] Golden also argues that the trial court erroneously denied her motion to publish Duffy's deposition. But it was Palmer, not Golden, who moved to publish Duffy's deposition, and that motion the court granted.

### III. Burden of Proof

¶24 Golden argues that Sarah approved of or acquiesced in all the actions challenged in the petition. She asserts that Sarah is presumed to have had the "capacity" to direct Golden's actions unless Palmer proves otherwise by clear and convincing evidence. Br. of Appellant at 10. Thus, according to Golden, because Palmer produced no evidence that Sarah lacked testamentary capacity or that she did not approve Golden's course of conduct, Palmer's claims fail.

¶25 Golden's argument lacks merit. She relies on the presumption of *testamentary* capacity, which refers to the mental capacity to make a valid will. BLACK'S LAW DICTIONARY 220 (8th ed. 2004). But this presumption does not apply when an agent claims that certain inter vivos transfers to him from the principal were gifts. Rather, the common law of gifts applies. *See Doty v. Anderson*, 17 Wn. App. 464, 471, 563 P.2d 1307 (1977). First, the agent must prove by clear, convincing, strong, and satisfactory evidence that the transaction was actually a gift. *Doty*, 17 Wn. App. at 471 (quoting *Tucker v. Brown*, 199 Wash. 320, 325, 92 P.2d 221 (1939)). Second, where the parties were in a confidential relationship (here, a durable power of attorney relationship), the agent also has to prove by clear, cogent, and convincing evidence that she did not exert undue influence on the principal. *Doty*, 17 Wn. App. at 471. Golden is incorrect that Palmer had to prove that Sarah did *not* approve the transfers of her property to Golden.

### A. Joint Edward Jones Account

¶26 More specifically, Golden maintains that Palmer had to prove by clear and convincing evidence that Sarah did *not* open the Edward Jones joint account herself with the intent to give all her funds to Golden. She relies on two legal bases, neither of which applies. The first is RCW 30.22.100(3), which provides that funds remaining in a joint account with right of survivorship after the death of a

depositor belong to the surviving depositors unless there is clear and convincing evidence of a contrary intent at the time the account was created. This provision applies only to accounts at financial institutions. RCW 30.22.040(1). Edward Jones is a stock brokerage firm, not a financial institution.[7] As such, joint tenancies with regard to its accounts are authorized under the general property provisions of RCW 64.28.010, which does not address the standard of proof for challengers.

¶27 The second legal basis is *In re Estate of Kessler*, 95 Wn. App. 358, 374, 977 P.2d 591 (1999), which requires clear and convincing evidence of fraud to set aside a will under chapter 11.24 RCW. But *Kessler* does not apply because Palmer is not challenging a will.

¶28 Palmer's theory, in fact, was that Golden created the joint account with right of survivorship using her power of attorney and that this action was void and ineffective because it was prohibited by RCW 11.94.050(1).[8] Under this theory, Palmer had to prove by a preponderance of the evidence only that Golden opened the account as Sarah's attorney-in-fact.

## B. Gifts in Good Faith

¶29 Golden also assigns error to the trial court's finding that certain expenditures by Golden during Sarah's lifetime were not in good faith. But in the brief, Golden

---

[7] RCW 30.22.040(12) defines a "financial institution" as a "bank, trust company, mutual savings bank, savings and loan association, or credit union." This definition applies notwithstanding any other definition in RCW 11.11.010(6).

[8] In a motion for reconsideration, Golden argues for the first time that this provision in RCW 11.94.050(1) does not apply to her because it did not come into effect until at least six months after she created the joint account with right of survivorship, on July 22, 2001. *See* LAWS OF 2001, ch. 203, § 12. Golden did not raise this argument to the trial court or to this court in her appeal, and it has long been the rule that we will not consider questions presented to us for the first time in a motion for rehearing or reconsideration. RAP 2.5(a); *Nostrand v. Little*, 58 Wn.2d 111, 120, 361 P.2d 551 (1961); *Hous. Auth. v. Ne. Lake Wash. Sewer & Water Dist.*, 56 Wn. App. 589, 595 n.5, 784 P.2d 1284 (1990); *see, e.g., 1515-1519 Lakeview Blvd. Condo. Ass'n v. Apartment Sales Corp.*, 146 Wn.2d 194, 203 n.4, 43 P.3d 1233 (2002); *State v. Leffler*, 142 Wn. App. 175, 185, 178 P.3d 1042 (2007). Golden's statutory argument is waived.

argues only that the trial court imposed the wrong burden of proof, not that the findings were unsupported by substantial evidence. She claims that bad faith must be proved as a matter of law. This argument has no merit; good faith is an issue of fact, not of law.[9] *Yuille v. State*, 111 Wn. App. 527, 533, 45 P.3d 1107 (2002).

## C. Existence of Fiduciary Duty

¶30 Golden, here, challenges the finding that she breached her fiduciary duties. An "attorney-in-fact" is an agent to whom the principal has given authority to act in his or her stead for the purposes set forth in the power of attorney. *See Bryant v. Bryant*, 125 Wn.2d 113, 118-19, 882 P.2d 169 (1994). In that role, the agent becomes a fiduciary who is bound to act with the utmost good faith and loyalty and to fully disclose all facts relating to his interest in and his actions involving the affected property; the agent must also deliver all benefits derived from or inuring to the property from the agent's breach of the fiduciary relationship to the principal. *Crisman v. Crisman*, 85 Wn. App. 15, 22, 931 P.2d 163 (1997) (citing *Moon v. Phipps*, 67 Wn.2d 948, 956, 411 P.2d 157 (1966)).

¶31 Golden appears to argue that the trial court could have found that she breached her fiduciary duties only if Palmer proved that she knew she had fiduciary duties. But fiduciary duties do not arise when the agent learns of her legal obligations arising from the agency relationship. Rather, a fiduciary relationship arises when the agent exercises dominion and control over the principal's property sufficient to alienate the principal's right to the property. *Crisman*, 85 Wn. App. at 22 (citing *Moon*, 67 Wn.2d at 955-56). Here, that occurred when Alfred and Sarah granted Golden a power of attorney to manage their

---

[9] Golden cites *Ellwein v. Hartford Accident & Indemnity Co.*, 142 Wn.2d 766, 15 P.3d 640 (2001), for her proposition, but her reliance is misplaced. Not only was that case limited to bad faith in the context of insurance companies, but it was also expressly overruled on this point by *Smith v. Safeco Insurance Co.*, 150 Wn.2d 478, 485-86, 78 P.3d 1274 (2003).

finances and other property. Palmer did not need to prove that Golden knew of her fiduciary duties of good faith and loyalty.

### D. Duty To Account

¶32 Golden maintains here that the trial court erred in finding that she had a duty to account for the missing assets. Inherent in the fiduciary relationship between principal and attorney-in-fact is the duty to account for the assets managed by the attorney-in-fact. *See Crisman*, 85 Wn. App. at 22 (agent has duty to fully disclose all facts relating to his interest in and his actions involving the affected property). RCW 11.94.090(1)(b) authorizes the court to compel an accounting from the attorney-in-fact if he or she fails to provide a proper accounting.

¶33 Golden does not dispute that she was unable to account for the amounts the trial court found to be missing. Rather, she argues that, based on her understanding of the record-keeping requirements imposed by the Internal Revenue Service or banks, she was not required to keep records for the time she was acting as attorney-in-fact. These factors have no bearing on Golden's legal duty to account to the estate for her actions affecting the property. The trial court properly found that Golden had a duty to account to Palmer and that she failed to satisfy this duty.

### IV. SUBSTANTIAL EVIDENCE FOR FACTUAL FINDINGS

¶34 Golden appears to assign error to several factual findings. Some of them, although phrased as challenges to "findings" by the trial court, appear to be legal challenges regarding the burden of proof, and we have discussed them above. But even as to the pure factual findings challenged, Golden does not comply with RAP 10.3(a)(5) and (g), which require parties to cite to the record for every factual statement and to refer to findings of fact by number when assigning error to them. She also does not type out the material portions of the findings verbatim or

append them to her brief. *See* RAP 10.4(c). As to assignments of error 8 and 15, Golden presents no argument for why substantial evidence does not support the challenged findings.

¶35 Counsel is obligated to demonstrate why specific findings of the trial court are not supported by the evidence and to cite to the record in support of that argument. *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998). We can waive some technical violations of the rules where the briefing makes the nature of the challenge perfectly clear, *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 710, 592 P.2d 631 (1979), but the Supreme Court has stated:

> Strict adherence to the aforementioned rule is not merely a technical nicety. Rather, the rule recognizes that in most cases, like the instant, there is more than one version of the facts. If we were to ignore the rule requiring counsel to direct argument to specific findings of fact which are assailed and to cite to relevant parts of the record as support for that argument, we would be assuming an obligation to comb the record with a view toward constructing arguments for counsel as to what findings are to be assailed and why the evidence does not support these findings. This we will not and should not do.

*Lint*, 135 Wn.2d at 532. In the absence of a clear challenge, we treat findings of fact as verities on appeal. *Lint*, 135 Wn.2d at 533.

¶36 Here, Golden presents proper challenges only to the following findings by the trial court: (1) that Duffy's deposition testimony was credible, while his trial testimony was not; (2) that Golden opened the Edward Jones account using her power of attorney; and (3) that Palmer was not a trustee of the trust until his mother's death in 2003. Accordingly, we review only these findings. *See Lint*, 135 Wn.2d at 533.

¶37 We will not reverse a trial court's findings of fact if substantial evidence supports it. *Rogers Potato Serv., LLC v. Countrywide Potato, LLC*, 152 Wn.2d 387, 391, 97 P.3d 745 (2004). Substantial evidence exists if a rational,

fair-minded person would be convinced by it. *Rogers Potato Serv., LLC*, 152 Wn.2d at 391.

## A. Duffy's Credibility

¶38 Duffy, an investment advisor for Edward Jones, testified in his deposition that Golden opened the Sarah/Golden account using her power of attorney. Then, at trial, he testified to the contrary: that Sarah opened the account herself. The trial court found his trial testimony inconsistent with his earlier testimony and not credible.

¶39 On appeal, Golden contends that a witness is either credible or not credible. From this all or nothing proposition, Golden reasons that having found Duffy not credible at trial, the court was obliged to find his deposition testimony "weak at best." Br. of Appellant at 18. We are not persuaded by Golden's premise that once the trial court finds a witness not credible, the trial court must reject the witness's prior statements or testimony. In addition, we do not make credibility decisions. *Boeing Co. v. Heidy*, 147 Wn.2d 78, 87, 51 P.3d 793 (2002). Rather, the trier of fact, which observes the witness's manner while testifying, alone passes on a witness's credibility and measures the weight of the evidence. *In re Welfare of Sego*, 82 Wn.2d 736, 740, 513 P.2d 831 (1973). The trial court was entitled to weigh Duffy's contradictory testimony and decide which it found to be more credible.

## B. Golden's Opening of the Account

¶40 The trial court found that Golden opened the Sarah/Golden joint account using her power of attorney. In doing so, it relied on several factors. First, Golden made the initial deposit on the day the account was opened using funds that she had withdrawn using her power of attorney. Second, Duffy testified in his deposition that Golden opened the account. Third, Golden admitted that she handled all of Alfred and Sarah's financial affairs under the powers of attorney after Alfred's stroke because they were not capable of doing so themselves. The court further found no credible

evidence that Sarah intended to give Golden all of her remaining funds upon her death.

¶41 Golden argues first that Palmer cannot prove that Golden opened the accounts unless she produces records from Edward Jones itself regarding the opening transaction, citing no authority for this proposition. We decline to adopt such a rule.

¶42 Golden also argues that Edward Jones would not have allowed Golden to create a joint account with right of survivorship because she was not specifically authorized to do so under RCW 11.94.050. Golden does not cite to the record for the proposition that Edward Jones was aware of Golden's need for such authorization. Further, even if the record contained such evidence, it would be only one factor for the trial court to weigh in deciding the ultimate factual question. In the face of Duffy's deposition testimony that Golden opened the account, the speculation about what Edward Jones must have known adds little to the balance in answering who opened the account. Ample evidence supports the trial court's finding that Golden opened the account.

## C. Palmer As Trustee

¶43 The trial court found that Palmer did not have authority as trustee to manage Sarah's assets until her death. Golden challenges this finding, arguing that Palmer could have taken steps to fund and run the trust in 1999, when Alfred and Sarah became incompetent but failed to do so. Golden fails to show how the timing of Palmer's succession as trustee affects the outcome in this case. If Palmer had taken control of Sarah's assets in 1999, Golden could not have converted the assets in 2000. But Golden does not explain why that would excuse her from liability for later converting her parent's assets.

## V. ATTORNEY FEES

¶44 Palmer asks for costs and attorney fees incurred in this appeal under RCW 11.96A.150,[10] which applies to proceedings involving trusts and decedent's estates and properties. RCW 11.96A.150(2). The trial court below awarded Palmer attorney fees and costs under this provision, and so do we, in an amount to be set by a commissioner of this court upon compliance with RAP 18.1.

¶45 Affirmed.

HOUGHTON, C.J., and QUINN-BRINTNALL, J., concur.

Reconsideration denied July 1, 2008.

---

[10] RCW 11.96A.150(1) states that this court "may, in its discretion, order costs, including reasonable attorneys' fees, to be awarded to any party . . . in such amount and in such manner as the court determines to be equitable."